## THOMPSON *et al.* v. AMMONS *et al.*

1. A non-expert witness can not be asked hypothetical questions as to facts which have been testified to by other witnesses in a case involving testamentary capacity and from those hypothetical questions give his opinion

as to the testamentary capacity of one who has executed a will. It was error to admit the evidence set out in the first division of the opinion.

2. It was error to admit the evidence set out in grounds 2, 5, 6, 7, and 9 of the motion for new trial.

3. The evidence set out ·in ground three of the motion for new trial was irrelevant and immaterial, and should have been excluded.

4. An expert witness may testify to opinions of his own derived from books. But the admission of the evidence set out in grounds 4 and 8 of the motion for new trial was erroneous.

5. The excerpt from the charge of the court set out in the sixth ground of the motion for new trial, in view of the entire charge, was not error.

6. As a new trial is granted, we do not pass upon the alleged irregularities in the conduct of the jury, this not being liable to recur upon another trial of the case.

7. As the case goes back for another hearing, we express no opinion on the sufficiency of the evidence to authorize the verdict.

No. 4713. AUGUST 13, 1925. REHEARING DENIED SEPTEMBER 23, 1925.

Appeal from probate of will. Before Judge Malcolm D. Jones. Houston superior court. November 21, 1924.

*W. A. McClellan* and *O. C. Hancock,* for plaintiffs in error. *Duncan & Nunn,* contra.

HILL, J. J. R. Ammons as the nominated executor of the will of Charles H. Thompson, deceased, offered in the court of ordinary of Houston County, for probate in solemn form, a paper purporting to be the last will and testament of Charles H. Thompson, deceased. J. B. Thompson and others filed a caveat to the will, upon the grounds, that at the time of its execution Charles H. Thompson had been stricken with a partial stroke of paralysis in the spring of 1918, from the effects of which he could not walk and had to be carried about in an invalid's chair; that he was insane and incapable of making a will, and was not of sound and disposing mind and memory; that it was not freely and voluntarily executed, but that at the time of making the alleged will Robert Walker carried Charles H. Thompson from his home to Perry, a distance of about ten or twelve miles, and there dictated the bequest set forth in the will, knowing at the time that Thompson was incapable of making a will and was a man of unsound mind, etc. The court of ordinary admitted the will to probate, and an appeal was taken to the superior court, where, after hearing evidence and the charge of the court, a verdict was rendered by the jury setting up the writing offered for probate as the last' will and testament of Charles H. Thompson, deceased. A motion

for new trial was filed by the caveators, upon the usual general grounds, which was later amended. The trial judge overruled the motion for new trial, and the caveators excepted.

1. Grounds one and ten of the amended motion for new trial are substantially the same, and will be considered together. Ground one complains because the witness John Slocumb was permitted, over objection of movants, to testify as follows: "If a man had a neighbor to go over and get another neighbor's car and take him to town about thirteen miles away, and when he got there he sought a lawyer and employed that lawyer to write a will for him, and, after the lawyer had been secured, he outlined to him, the lawyer, his property he had owned, and the property he wanted to give to certain people, and he called over to the lawyer the names of his wife's blood relatives, and divided it among the relatives of his wife, and after doing that he had the will read over to him, and stated in the presence of the witnesses and the attorney that was what he wanted to do with his property, and signed and published the will, and on that same day thereafter, in the same town, he engaged in a trade for a Ford automobile, and discussed it with the dealer a half an hour, and outlined what he wanted on the car in the way of extras, and specified he wanted a certain kind of top put on the car, and made arrangements as to the purchase of the car, it looks like that man ought to have had capacity enough to make a will." The above evidence was objected to on the ground that the witness was not an expert, and that the testimony was a conclusion of the witness and was the opinion of a non-expert witness, and that it was hurtful and tended to influence the jury against movants. It appears from the record that the above evidence was admitted on cross-examination. On direct examination the witness had stated that the testator was of unsound mind. The non-expert witness can not be asked hypothetical questions as to facts which have been testified to by other witnesses in a case, and from those hypothetical questions thus propounded give his opinion as to the testamentary capacity of one who has executed a will. It was error to admit the evidence objected to. In Rambler *v.* Tryon, 10 Am. D. 444, 447 (7 Sergeant & Rawle, 90), it was held that "witnesses giving their opinion as to the capacity of testator, founded on facts known to them, can not in cross-examination be asked what their opinion would be on a different

state of facts." In delivering the opinion of the court, in this case, Duncan, J., said: "In the cross-examination of the Rev. Dr. Lochman and Judge Gloninger, who drew the will, and who were examined in chief by the plaintiffs in error, who spoke of the knowledge of Michael Rambler, and testified to his capacity, a string of very extraordinary questions were put to them, which were objected to, the objection overruled, and exception taken. These witnesses had given an opinion of the capacity of this man, founded on facts known to them, and conduct within their own observation. And they were called on to say what their opinion would be in a different state of affairs. These questions were ensnaring, and to which the witnesses themselves might justly have excepted; they drew their opinions from their own knowledge and observation, not from the knowledge and observation of others. They gave the opinion and the reasons for the opinion on oath. They were not bound to give an opinion on an assumed statement of facts, or facts sworn to by other witnesses; but this evidence the plaintiffs in error were right in objecting to, although the witnesses might be willing to answer the questions. Opinion is no evidence, without assigning the reason of such opinion. Now, the witnesses had already given the opinion, and the facts on which they founded it; the jury were to judge of the correctness of that opinion from the facts and reasons stated by the witnesses. But the witnesses' opinion of the capacity of a man must not be founded on the hearsay of others, or the oath of others. As well might the defendants in error have called for the opinion of any bystander who had heard the evidence given by them of the state of the man's mind, and asked him what he thought of the capacity of Michael Rambler." And see, to the same effect, Lang v. Lang, 157 Iowa, 300, 135 N. W. 604, 22 C. J. § 791; 38 L. R. A. 743, and note; In re Durham, 27 Conn. 192; 11 R. C. L. 647, § 63.

2. The assignments of error in grounds 2, 5, 6, 7, and 9 of the amended motion for new trial are substantially the same, and will be considered together. The hypothetical questions propounded to the witnesses, and which the court permitted the witnesses to answer, were objected to as conclusions of the witness, and because prejudicial and hurtful to movants, for the reason that the basis of the hypothetical questions was in accord-

ance with the facts as contended by the propounders of the will, which facts themselves were the issues in the case, and hence the hypothetical questions were improper and hurtful to the movant. For the reasons given in the first division of the opinion the court erred in admitting this evidence.

3. Error is assigned in the third ground of the motion for new trial, because the trial court permitted the question therein set out to be propounded to the witness on cross-examination, the witness having qualified as an expert. The witness in this instance was a medical doctor, and he testified: "I was not consulted in the case of G. R. Ellis of Americus, who was paralyzed about a year ago. I have read something of the case of President Wilson. He suffered a partial stroke that paralyzed his right hand and side, and lived four years afterwards. I do not know whether at times he seemed to be in full possession of his mental faculties or not. I have only the newspapers reports of it. I read his radio speech, which showed considerable mental capacity; if he wrote it, and if he delivered it over the radio, it was wonderful." This evidence was objected to on the ground that it was a mere conclusion of the witness, irrelevant, immaterial, and prejudicial to movants' case, for the reason that it was based on hearsay and newspaper reports. We are of the opinion that the evidence objected to was irrelevant and immaterial, and that it was of such character as to cause a reversal.

4. The fourth ground of the amended motion for new trial assigns error because a witness, Dr. A. P. Kemp, was permitted, over the objection of movants, to testify as follows: "I am familiar with the text-book of Taylor, which is recognized as one of the standard text-books. The medical term of [partial] paralysis is hemiplegia. I agree with Mr. Taylor as to the case in France where a will was contested and the physician said that the paralysis might affect the brain, but that this in his opinion did not indicate an impairment of the intellectual power. I said, in answer to counsel for caveators, in my opinion in the case he outlined that the patient did not have a rational desire as a general thing, but he might have." This evidence was objected to on the ground that it was a conclusion, was based on hearsay and on a book which is not an authority in law, and on the ground that, although the witness was an expert, his testimony does not

express a direct opinion. It was further objected to on the ground that the evidence was irrelevant and immaterial, prejudicial, and hurtful to movants. This witness was upon cross-examination, and we are of the opinion that this evidence is of such a character as requires the grant of a new trial. An expert may testify to opinions of his own derived from books. *Boswell* v. *State*, 114 *Ga.* 40 (3) (39 S. E. 897); *Mayor &c. of Jackson* v. *Boone*, 93 *Ga.* 662 (20 S. E. 46). But the witness here did not express his own opinion as to the instant case, but merely said, "I agree with Mr. Taylor as to the case in France," etc. It is true he testified: "I said, in answer to counsel for caveators, in my opinion in the case he outlined that the patient did not have a rational desire as a general thing, but he might have." But here the witness does not give his own opinion.

5. Ground 8 of the motion for new trial assigns error because the court permitted a witness, Dr. C. R. Mann, to testify, over objection, as follows: "I consider it good authority where Mr. Taylor said: 'Where property is bequeathed by a testator out of the usual order of succession, it may be later alleged by the relatives that he was wholly incompetent to understand the nature of the deed, either from actual insanity or imbecility of age, or that natural failure of mind which [is] so often observed to occur from disease or on the approach of death. Bodily disease or incapacity does not affect the validity of a will, unless the mind be directly or indirectly disturbed by it. Sometime since, a case occurred in France in which a will was contested on the ground that the testator when he executed it was laboring under hemiplegia. The opinion of Esquirol was required, and he said that hemiplegia might undoubtedly affect the brain, a fact clearly indicated by the sight, hearing, or other senses becoming weakened; yet this, in his opinion, did not necessarily indicate an impairment of the intellectual powers.'" Movants objected to the foregoing testimony, on the ground that the same was a conclusion based on hearsay and did not express a direct opinion from the witness in accordance with his own qualifications as an expert, but in testifying the witness referred to a book which is no authority in law; the evidence being wholly irrelevant, immaterial, and prejudicial. For the reason that the opinion was based upon hearsay, as well as for the reason stated in division four of this opinion, the admis-

sion of this evidence was error. The witness nowhere gave his own opinion, but merely endorsed the opinion of Taylor. If the witness had said, for instance, "my opinion is, from the hypothetical question propounded, that the testator did not have sufficient testamentary capacity to make a will—to dispose of his property as he saw fit, and I base that opinion upon the text-book of Taylor," etc., then such testimony would have been admissible.

6. Error is assigned on the following charge of the court to the jury: "On the other hand it means that if in your minds there should be doubt about his capacity, in order to resolve that doubt you may consider the reasonableness or unreasonableness of the disposition he made of his property, just as you consider any other fact or circumstance in the case. If you arrive at the conclusion he had sufficient mentality to make a will, you are not concerned with what he did with his property; but if you are in doubt, then you take the scheme of the disposition of the property into consideration with all the other circumstances of the case." The objection to this charge is that the jury was instructed in effect that before they should consider the reasonableness or unreasonableness of the disposition made by the testator of his property there must be doubt in their minds as to his testamentary capacity. It is argued that under the law the reasonableness or unreasonableness of the disposition of a testator's property is one of the circumstances to be considered by the jury in determining whether there is doubt as to his testamentary capacity; and it is insisted that the charge excepted to precluded the jury from considering the reasonableness and unreasonableness of the testator's will in this case, unless doubt as to his testamentary capacity had first from some other cause been created in their minds. It is further insisted that the charge as given put upon the caveators the burden of creating in the minds of the jury a doubt as to the testamentary capacity of the deceased, before the jury were authorized to consider the reasonableness or unreasonableness of the will, and that one of the facts that might generate a doubt as to such capacity is the unreasonableness of the will, which fact the jury were told was not to be considered until that doubt already existed. The above is merely an excerpt from the charge of the court. Taken in connection with the entire charge we are of the opinion that it is not open to the criticism made against

it.　The court charged the jury § 3841 of the Civil Code of 1910, and then explained its meaning as follows: "Eccentricity of habit or thought does not deprive a person of power of making a testament; old age, and the weakness of intellect resulting there-from, does not of itself constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In case of doubt as to the extent of this weakness, the reasonable or un-reasonable disposition of his estate should have much weight in the decision of the question. That means if a man has capacity to make a will, you are not concerned with whether the disposition which he makes of his property seems to you to be reasonable or unreasonable, natural or unnatural, if he has capacity to make a will, because, it being his own property, he has a right to do with it as he sees fit, so he does not violate any law or public policy of the land. On the other hand, it means that if in your minds there should be a doubt about his capacity, in order to resolve that doubt you may consider the reasonableness or unreasonableness of the disposition he has made of his property, just as you consider any other fact or circumstance in the case. If you arrive at the conclusion that he had sufficient mentality to make a will, you are not concerned with what he did with his property; but if you are in doubt, then you take the scheme of the disposition of his prop-erty into consideration with all the other circumstances of the case." See *Penn* v. *Thurman,* 144 *Ga.* 67 (3) (86 S. E. 233).

7.　As the case goes back for another hearing, we express no opinion as to the sufficiency of the evidence to support the verdict.

*Judgment reversed.　All the Justices concur.*