412 P.2d 716

Florence SCHMIDT, surviving spouse of Frank J. Schmidt, deceased, individually, and for and on Behalf of Gail Schmidt, surviving daughter of Frank J. Schmidt, deceased, Appellant,

v.

J. L. GIBBONS and Frances Gibbons, his wife, dba Arizona Cement Transportation Company, and William D. Eisele and Irene Eisele, his wife, Appellees.*

I CA–CIV 291.

Court of Appeals of Arizona.

March 31, 1966.

Rehearing Denied June 16, 1966.

Review Granted July 12, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 7181. The matter was referred to this court pursuant to A.R.S. § 12–120.23.

148

Belli, Ashe, Gerry & Ellison, by Robert L. Lieff, San Francisco, Cal., for appellant.

Fennemore, Craig, Allen & McClennen, by Calvin H. Udall, Phoenix, for appellees.

MOLLOY, Judge.

This is an appeal from judgment entered upon a jury verdict favoring the defendants in a wrongful death action arising out of an automobile driven by the decedent colliding with the rear end of a parked truck. The facts of the controversy are of limited importance since the only issues raised on appeal relate to the giving, over objection, of instructions on contributory negligence, and questions relating to the admissibility in evidence of opinion testimony of experts.

The defendants below, appellees in this court, properly alleged the affirmative defense of contributory negligence in their answer to the plaintiff's complaint, and the trial court instructed the jury as follows:

"I instruct you that the driver of an automobile at night is negligent if he collides with an object which he has failed to see, and which an ordinarily prudent driver under like circumstances would have seen and with reasonable care could have avoided.

"If you find that plaintiff's decedent, Frank J. Schmidt, negligently failed to control his vehicle, and negligently failed to see the defendants' truck and trailer, and that this negligence proximately caused or proximately contributed to the cause of his death, *then the plaintiff is not entitled to recover*.

"Ordinarily it is a question of fact for the jury to decide whether particular conduct was negligent. Such is not the case, however, where a person violates a specific rule made by the legislature to govern the kind of conduct in question. Where an automobile driver violates a statute or ordinance enacted for the safety of persons or property such a violation is negligence as a matter of law." (Emphasis added)

149

The foregoing was among other instructions upon the subject of contributory negligence as to which there is no complaint. Among these instructions was an instruction delineating the factual issues of the case and informing the jury that if its finding on contributory negligence were favorable to the position of the defendants:

"* * * then you *may* find for the defendants, but if you find that the plaintiff's decedent was not guilty of contributory negligence, you *must* find for the plaintiff, * * *." (Emphasis added)

In Arizona it has become increasingly perilous for a trial court to instruct a jury regarding contributory negligence. The peril arises from the confusion which surrounds the law of contributory negligence as a result of decisions handed down in recent years. Today trial judges in this state are caught betwixt and between, due to an essential conflict between their duty to declare the law and the danger that a choice of language will be deemed reversible error on appeal. In view of the perplexity with which the trial bench is faced in this regard, we deem it desirable to review the law governing instructions on contributory negligence at this time.

The Constitution of Arizona, provides art. 18, § 5, A.R.S., that:

"§ 5. Contributory negligence and assumption of risk.

"Section 5. The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

■ Although article 18 of the Arizona Constitution, in which the above quoted provision is found, is dedicated to a consideration of labor law, it has been held that questions regarding contributory negligence are jury questions in all negligence actions. Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325 (1947). It has been in the general field of negligence litigation divorced from labor law that the most significant decisions interpreting the constitutional

provisions of article 18, section 5, have been rendered.

■ Two distinct but interrelated questions must be considered with reference to contributory negligence instructions: first, instructions which purport to define contributory negligence in terms of specific conduct, and second, instructions which deal with the jury's duty subsequent to its determination that the facts in issue do in fact constitute contributory negligence. The leading case representing the former proposition is Wolfswinkel v. Southern Pacific Company, 81 Ariz. 302, 305 P.2d 447 (1956), amplified, 82 Ariz. 33, 307 P.2d 1040 (1957); for the latter, Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962).

## DEFINITION OF CONTRIBUTORY NEGLIGENCE

In Varela v. Reid, 23 Ariz. 414, 204 P. 1017 (1922), the Supreme Court noted that article 18, section 5, of the Arizona Constitution, was taken from article 23, section 6, of the Constitution of the State of Oklahoma and observed that:

"The Oklahoma Supreme Court, construing the constitutional provision of that state, has held that the court is precluded thereby from instructing the jury whether the facts do or do not constitute contributory negligence." 23 Ariz. 414, 420, 204 P. 1017, 1019 (1922).

See Pioneer Hardwood Co. v. Thompson, 49 Okl. 502, 153 P. 137 (1915), Wichita Falls & N. W. Ry. Co. v. Woodman, 64 Okl. 326, 168 P. 209 (1917).

The court, in Varela, went on to say:

"We have no doubt that the court may properly tell the jury what constitutes in law the defense of contributory negligence. *That defense has not been abolished by our Constitution,* and the use of the term implies that the courts are bound to know and declare it for what it is, to recognize its sufficiency in law when pleaded and proof is offered to sustain the plea, and to delimit and define its boundaries from other permissible defenses and pleas. On the other hand, as

is held in the cases cited (decided by this court), the finding of the jury on the question is conclusive, by which is meant that, whether the facts found or believed by the jury do or do not show that the act or omission charged was negligent, as, in truth, lacking in care, and whether, if so lacking, it contributed to or caused the injury is solely a question for the jury to decide." (Emphasis added) 23 Ariz. 414, 421, 204 P. 1017, 1020 (1922).

In Wolfswinkel v. Southern Pacific Company, 81 Ariz. 302, 305 P.2d 447 (1956), the Supreme Court considered the following instruction:

" ' * * * You are instructed that if you find from a preponderance of the evidence that Clarence Wolfswinkel failed to exercise proper vigilance or failed to yield the right-of-way to the approaching train and that such failure contributed, however slightly, to the collision, then you must find Clarence Wolfswinkel to have been guilty of contributory negligence.' " 81 Ariz. 302, 305–306, 305 P.2d 447, 450 (1956).

After reviewing the previous cases dealing with contributory negligence instructions, especially Varela v. Reid, supra, the court concluded:

"We therefore hold that Instruction No. 9 violates Article XVIII, Section 5, of the Arizona Constitution, in that the trial court improperly instructed the jury that if they found certain facts to exist the plaintiff was guilty of contributory negligence. This incorrect statement of the law constitutes reversible error." 81 Ariz. 302, 307, 305 P.2d 447, 451 (1956).

On rehearing, 82 Ariz. 33, 307 P.2d 1040 (1957), the court amplified its position in the first Wolfswinkel case:

"*It is permissible for the court to instruct that if it finds hypothetical facts to exist which as a matter of law would be negligence on the part of a defendant,* it may find the defendant to have been negligent and that if such negligence was the proximate cause of the accident and

injury, the plaintiff should recover, Pearson & Dickerson Contractors, Inc., v. Harrington, 60 Ariz. 354, 137 P.2d 381; but the legal conclusion of negligence must necessarily follow from the stated facts. Southern Pacific Company v. Bolen, 76 Ariz. 317, 264 P.2d 401. *We know of no good reason why the same rule should not be permissible when the court is instructing the jury what is contributory negligence.* True, the jury under our constitution is the final arbiter but to enable the jury to make its decision according to law (which presumably under its oath it would do), *it is entitled to know what under the law would be negligence on the part of the plaintiff, as tested by the acts of a reasonable, prudent person under like or similar circumstances, and when that negligence would amount to contributory negligence.* This form of instruction in no way takes from the jury its constitutional right to judge for itself the ultimate questions of whether plaintiff was negligent and if so, whether such was a proximate contributing cause of the injury.

"The questioned instruction is wrong. The jury was told in effect that if plaintiff failed to yield the right of way he was negligent. In fact, he did fail to do so, else there would have been no accident and his failure necessarily contributed thereto. It does not necessarily follow that plaintiff was negligent for failing to yield the right of way. As bearing on negligence, the important thing is whether under all the circumstances in the exercise of due care, he should have yielded. The circumstances might be such that one not yielding the right of way was in no respect negligent.

"This instruction was in form mandatory. In fact, it was in effect an instructed verdict for the defendant on the question of contributory negligence. As stated, plaintiff failed to yield the right of way and such failure contributed to the accident. The jury was told that un-

der such circumstances, it must find for the defendant.

"Hypothetical instructions on common law negligence at best are dangerous. The hazards of using an incorrect hypothesis are great. If given, it should be done with extreme care." (Emphasis added) Wolfswinkel v. Southern Pacific Company, 82 Ariz. 33, 35, 307 P.2d 1040, 1041 (1957).

The Wolfswinkel doctrine was applied in Terzis v. Miles, 90 Ariz. 120, 366 P.2d 683 (1961), a case in which the jury was instructed that the plaintiff was guilty of negligence as a matter of law in walking across an intersection against a red light contrary to a statutory provision, and in which the plaintiff maintained that the instruction violated article 18, section 5. The court held:

"The instruction does not take the fact of contributory negligence from the jury. We have many times held that the court should declare the law on contributory negligence to the jury and let it decide whether such fact exists. We have also held that the court might properly hypothetically instruct the jury as to what amounts to common-law negligence. Wolfswinkel v. Southern Pacific Company, 82 Ariz. 33, 307 P.2d 1040. There is neither reason nor logic in preventing the court from telling the jury that it is negligence per se to violate the safety law herein involved and leave it to the jury to decide whether such violation amounted to contributory negligence." 90 Ariz. 120, 122, 366 P.2d 683, 684 (1961).

The Wolfswinkel doctrine that the trial court is precluded from instructing the jury as to what conduct constitutes negligence, has been recently reiterated, Aguilar v. Carpenter, 1 Ariz.App. 36, 399 P.2d 124 (1965).

■ The rules governing the trial court in defining contributory negligence as gleaned from the cases considered above, may be conveniently abbreviated as follows: the court may instruct (indeed, must instruct,

Varela v. Reid, 23 Ariz. 414, 204 P. 1017 (1922)) that contributory negligence is a defense available to the defendant where pleaded and proved (article 18, section 5, of the Arizona Constitution), but must not mandatorily direct the jury that any particular conduct of the plaintiff constitutes "contributory negligence" (Wolfswinkel v. Southern Pacific Company, 81 Ariz. 302, 305 P.2d 447 (1956)); may instruct on the standard of care (reasonable, prudent man) required of the plaintiff (Wolfswinkel v. Southern Pacific Company, 82 Ariz. 33, 307 P.2d 1040 (1956)); and may instruct that certain conduct of the plaintiff is "negligence per se" (Terzis v. Miles, 90 Ariz. 120, 366 P.2d 683 (1961)).

■ Applying these rules to the instruction given in the case before us, there appears to be no violation of the Wolfswinkel doctrine, in that the jury was not compelled to conclude that any particular conduct on the part of the plaintiff constituted contributory negligence. On the contrary, that portion of the instruction quoted above which defines contributory negligence is the very type of non-mandatory hypothetical instruction approved in Wolfswinkel v. Southern Pacific Company, 82 Ariz. 33, 307 P.2d 1040 (1957). Such an instruction apprises the jury of what it is " * * * entitled to know * * *": "* * * what under the law would be negligence on the part of the plaintiff, as tested by acts of a reasonable, prudent person under like or similar circumstances, and when that negligence would amount to contributory negligence." Wolfswinkel v. Southern Pacific Company, 82 Ariz. 33, 35, 307 P. 2d 1040, 1041 (1957).

## DUTY OF JURY IF CONTRIBUTORY NEGLIGENCE FOUND

The second issue involves the instructions which the trial court may or must give the jury to guide its deliberations in the event that it concludes that the plaintiff's conduct constitutes contributory negligence. In Layton v. Rocha, 90 Ariz. 369, 368 P. 2d 444 (1962), the Supreme Court approved an instruction whereby the jury

was told that if both parties were negligent and such negligence proximately contributed to bringing about the accident, the law would leave them where it finds them " 'and the plaintiff *may* not be entitled to recover and your verdict *may* be for the defendant.' " The decision in Layton v. Rocha contained the following discussion:

"During the past forty years this court has rendered many decisions interpreting the foregoing provision of the Constitution. From 1920 to the present time it has been consistently held that when there is evidence that the plaintiff was negligent, whether such negligence was a contributing cause of the injury as would deprive the plaintiff of the right to recovery was solely a question for the jury. Campbell v. English, 56 Ariz. 549, 110 P.2d 219; Zancanaro v. Hopper, 79 Ariz. 207, 286 P.2d 205. It is unnecessary to tabulate other Arizona cases to the same effect which are referred to in these decisions. Even though the undisputed evidence shows that plaintiff's negligence did as a fact contribute to the injury the jury *may* find in favor of the plaintiff and this court cannot direct a new trial. Dennis v. Stukey, 37 Ariz. 299, 294 P. 276, rehearing denied, 37 Ariz. 510, 295 P. 971; Campbell v. English, supra. In other words, the court should advise the jury what, under the law, amounts to contributory negligence but it is deprived of the power to instruct the jury as to what its verdict must be. Defendant requested a *must* instruction. To this he was not entitled under these authorities.

"We have approved instructions that if a jury finds plaintiff guilty of contributory negligence it should find for the defendant. Dennis v. Stukey, supra. The form given here was that it *may* so find. *We think the preferable form is that in the event of contributory negligence the jury 'should' find for the defendant. This form more accurately advises the jury of its duty.* Since under our decisions a verdict for the plaintiff is permissible irrespective of the strength of the evidence concerning plaintiff's negligence, and the jury under the law as announced may decide the issue for plaintiff even though the evidence clearly shows he was guilty of contributory negligence, we cannot say that the court committed reversible error by phrasing the instruction permissibly with the word 'may'.

"The defendant claims a mistrial should have been granted because of language employed by counsel for the plaintiff while cross-examining the defendant. The inquiry of defendant was whether he had made out some report or stated to someone what the witness believed had happened." (Emphasis added) Layton v. Rocha, 90 Ariz. 369, 370–371, 368 P.2d 444, 445 (1962).

In Mantovani v. Green, 90 Ariz. 376, 368 P.2d 448 (1962), opinion written by Windes, J., who also authored the Layton decision, the court held it was proper to refuse an instruction telling the jury it was " * * * the trier of both law and fact." (90 Ariz. 376, 378, 368 P.2d 448, 450 (1962)). The reason for upholding the refusal of such an instruction was stated in terse but enigmatic language: "Such instruction would have been inappropriate." [1] (90 Ariz. 376, 378, 368 P.2d 448, 450 (1962)).

"Defendant contends the disputed instruction permits the jury to determine the law of contributory negligence. We do not read the instruction to permit such when considered in view of all the instructions. The jury was adequately instructed on the issue of contributory negligence. There was no law for the jury to determine as to this issue, but rather to consider the facts to decide if plaintiff was at fault by his conduct which might bar recovery."

---

1. Since this opinion was written, but before the release thereof, the Supreme Court of the State of Arizona has rendered the decision of Rogers v. Mountain States Telephone & Telegraph Company, Ariz., 412 P.2d 272 (1966). In this case the court refused to reverse because an instruction was given substantially the same as that deemed to be "inappropriate" in Mantovani. However, the court in Rogers states:

Subsequent decisions have condemned particular language mandating verdict for the defendant. The following language has been condemned: " ' * * * if [the plaintiff is contributorily negligent] * * * then it is your sworn duty to return a verdict for the defendants,' " and " ' * * if [the plaintiff is contributorily negligent] * * * then you are instructed to find in favor of the defendants,' " Coyner Crop Dusters v. Marsh, 91 Ariz. 371, 374, 372 P.2d 708, 710 (1962); " ' * * * there can be no recovery * * * ' " Alires v. Southern Pacific Company, 93 Ariz. 97, 104, 378 P.2d 913, 916 (1963); and " ' * * under such circumstances the law requires you to and it is your duty to return a verdict for the defendant,' " " ' * * * the plaintiff cannot recover * * * because contributory negligence constitutes a complete defense to the claim of the plaintiff,' " and " 'One who is guilty of contributory negligence may not recover from another for injury suffered, no matter how negligent the other party may have been,' " Trojanovich v. Marshall, 95 Ariz. 145, 146, 147, 388 P.2d 149, 150 (1963). In note 2 to Alires v. Southern Pacific Company, 93 Ariz. 97, 103, 378 P.2d 913, 916 (1963), various combinations of language so condemned are characterized as "imperative directives." None of these decisions subsequent to Layton and Mantovani has purported, however, to reject the concept, clearly expressed in Layton and Mantovani, that if the jury finds contributory negligence (using the term in the sense of plaintiff's negligence which is a proximate cause of plaintiff's injury), it is the "duty" of the jury to find for the defendant.

■ It is inconceivable to this court that the trial court should tell the jury that it "should" find for the defendant under certain circumstances unless this be the duty of the jury under the law of this state. We believe, accordingly, that the defense of contributory negligence has not been abrogated from Arizona law, but only instructions having certain coercive qualities insofar as the jury's doing its duty is concerned.

We accordingly consider whether the language of the subject instruction violates the Layton doctrine by imperatively directing the decision to be rendered by the jury on contributory negligence.

■ It is our opinion that the language employed—" * * * is not entitled to recover"—does not convey the coercive quality which our Supreme Court has condemned. The first definition listed in Webster's Third New International Dictionary (1964) for the word "entitle" is "to give title to." The first appropriate definition in this same work as to the word "title" is:

"The union of all the elements constituting legal ownership and being divided in common law into possession, right of possession, and right of property."

Clearly, a plaintiff who has been contributorily negligent is not, in the sense of this definition at least, "entitled" to recover under our law. We do not consider the subject language any more imperatively directive than the approved formula "should." This is particularly so in view of the trial court's basic instruction delineating the four "issues" of the case, in which the jury was told that if it found contributory negligence " * * * you *may* * * * " (emphasis added) find for the defendants. We hold that the subject language is declarative of the common law to the effect that contributory negligence is a defense in an action of negligence and that the trial court did not err in giving the instructions on contributory negligence.

As we read the Rogers decision, it again does not purport to abrogate the defense of contributory negligence nor to leave to the jury the determination of the law in this regard. Accordingly, we release our opinion as written before the Rogers decision.

**154**

## BASING AN OPINION UPON AN OPINION

Appellants next contend that the trial court erred in allowing an expert witness to express his opinion regarding the speed of decedent's vehicle prior to skidding into defendants' parked truck. The error alleged is that the opinion rendered was, contrary to law, (1) based on the opinion of a prior expert witness, and (2) based on facts not in evidence. The hypothetical question posed by defendants' counsel to the expert, a training officer for the Arizona Highway Patrol, assumed a highway coefficient of friction of .57, skid-marks of 171 feet, and an impact speed of 60 miles per hour. The only question raised on appeal refers to the assumed impact speed. The expert calculated [2] that under such assumed facts plaintiff's decedent was traveling at 86 miles per hour before applying his brakes. This conclusion was later amended to 81 miles per hour. Plaintiff's counsel, on re-cross-examination, posed the same question to the expert, assuming the same coefficient of friction and skid-marks, but substituting a 25 miles per hour impact speed. In response to this question, the expert calculated the pre-skid speed at 57 miles per hour.

 The transcript of testimony forwarded to this court by the appellant is incomplete, and there is therefore no way of knowing that there was no predicate for the hypothesis of the 60 miles per hour speed. Under these circumstances we are required to assume that the trial court acted properly. U. S. Manganese Corporation v. Schuster, 84 Ariz. 31, 323 P.2d 5 (1958).

However, even in the portion of the testimony submitted to us there would appear to be some foundation for the ques-

tion posed. An automobile-truck repairman, of long experience, was placed on the stand by the plaintiff and described the considerable damage caused to the two vehicles involved in this collision. On cross-examination, he testified that in his work he had on many occasions observed the results of collisions when vehicles had been traveling at speeds of 50 or 60 miles per hour. He thereupon expressed his opinion based on his examination of these vehicles as to the impact speed at the time of collision:

> "I would say he was going at a pretty good speed. It could have been 50 or 60 or 70."

Subsequently, on redirect examination the witness stated:

> "In my opinion it could have been traveling 40 or 50 to 60 or 70, but what speed it was going when it hit the truck nobody knows."

In addition, there was testimony of extensive damage to both decedent's auto and defendants' truck which would indicate, by fair implication, a considerable impact speed. Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934 (1961).

In Gillespie Land and Irrigation Company v. Gonzalez, 93 Ariz. 152, 379 P.2d 135 (1963), the Arizona Supreme Court said:

> "It has been stated that an expert may not base his opinion upon the inferences and conclusions of others, Mt. Royal Cab Co. v. Dolan, 168 Md. 633, 179 A. 54, 98 A.L.R. 1106 (1935); cases cited, annot. 98 A.L.R. 1109 (1935). *The purpose of this rule is to prevent the expert from basing his testimony on assumptions which are unknown to the jury and un-*

---

2. The formula employed by the witness is explained in the Traffic Accident Investigator's Manual For Police (3d ed. 1957), published by the Traffic Institute of Northwestern University as follows:

 "If a vehicle skids a certain distance and then crashes, an estimate of the speed needed to *slide to a stop* can be made as in 52.354. A speed can also be assumed or estimated at the key point [point of impact]. Then, to get the total speed at the beginning of the slide, these estimates must be combined; the two speeds cannot be added. They must be squared, the squares added and the square root of the sum of the squares taken."

*supported by the evidence.* McCormick, Evidence, § 15 (1954). Here however, the source of the underlying assumption, the Weather Bureau publication, was admitted in evidence and the manner of its preparation was explained by the Arizona state climatologist of the U. S. Weather Bureau. The same characteristics of disinterest and reliability that permit recognized treatises to serve as the foundation of expert opinion apply here. Cf. Boswell v. State, 114 Ga. 40, 39 S.E. 897 (1901); Thompson v. Ammons, 160 Ga. 886, 129 S.E. 539 (1925); McCormick, Evidence § 296 (1954)." (Emphasis added) 93 Ariz. 152, 159, 379 P.2d 135, 141 (1963)

 The italicized sentence from Gillespie states what we believe to be the reason behind the broad statement that an opinion may not be based upon an opinion, and this prophylactic principle was not violated here. To the extent that an opinion of an expert was based upon an opinion in this case, it was upon an opinion expressed in court by a witness duly qualified and subject to examination by both parties. Under these circumstances, we hold that the general rule that an opinion may not be based upon an opinion serves no worthwhile purpose and unnecessarily restricts the ascertainment of truth. We realize that the majority view may be to the contrary, annot. 98 A.L.R. 1109 (1935), but believe the better-reasoned view has been established in Gillespie, supra. Such a view has the blessing of Professor Wigmore:

"(d) It is sometimes said that 'an opinion of an expert cannot be *based upon opinions expressed by other experts*'; but this is unsound. Keeping in mind that the ordinary distinction between 'fact' and 'opinion' has here no value (ante, § 672, post, § 1919), it will be seen that the basis for a hypothetical opinion may be either data observed or data inferred, and that inferred data presented by expert testimony may equally well become a part of the basis for a hypothetical question; e. g. (as in the case cited) a fireman may testify to coal in the furnace, and a chemist may testify, hypothetically on the burning of coal, that the gas generated would be carbon monoxide, and then another expert may be asked what would be the effect of an explosion of carbon monoxide on starch dust in the oven room. *There is no mysterious logical fatality in basing 'one expert opinion upon another'; it is done every day in business and in applied science.* For that matter, 'in everyday trials factual opinions or conclusions of both lay and expert witnesses are utilized in hypothetical questions.'" (Emphasis added) 2 Wigmore, Evidence § 682, p. 810 (3d ed. 1940)

 For the reasons stated we are unable to agree with appellant's contention that the hypothetical question posed was improper.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.