579 P.2d 1382

Richard Gene REEVES, Alton Reeves and Helen Doe Reeves, husband and wife, doing business as Reeves Livestock Transport, Appellants,

v.

Irene MARKLE, surviving spouse of Robert C. Markle, for and on behalf of Irene Markle and the surviving children of Robert C. Markle, Appellee.

No. 13488–PR.

Supreme Court of Arizona,
In Banc.

May 10, 1978.

Rehearing Denied June 6, 1978.

Price, Tinney, Lindberg & Gianas by John E. Lindberg, Tucson, for appellants.

Quigley & Quigley, P.C. by John M. Quigley, Tucson, for appellee.

GORDON, Justice:

Following the trial of a wrongful death action, appellee moved for a new trial. The motion was granted, but the Court of Appeals reversed the new trial order and denied appellee's motion for rehearing. We accepted review of this case following the filing of a petition for review pursuant to Rule 47(b), 17A A.R.S. Supreme Court Rules.

The sole question presented is whether the trial court erred in granting a new trial. The grounds relied on by the trial court for setting aside the jury's verdict included, *inter alia*:

(1) Its failure to instruct on the doctrine of last clear chance;

(2) Its refusal to allow the plaintiff's accident reconstruction expert to testify as to the speed of the vehicles at impact and upon separation; and

(3) "Upon the further ground that the verdict of the jury is not justified by the evidence and contrary to the great weight of evidence, and in connection therewith, the Court declares that it has reviewed the sufficiency of the evidence to support the judgment, and that the Court was shocked by the verdict of the jury."

This wrongful death action arose from a two vehicle accident on Highway I–10, a divided, four lane highway in Arizona. At approximately 5:20 p. m. on May 8, 1975, Ricky Reeves was operating a Peterbilt truck and trailer owned by the Reeves Livestock Transport Company. Reeves had been driving for approximately thirty hours without rest—except for a thirty minute period of unloading cattle from the trailer, and a two hour repair break during which he consumed a "couple of beers" and ate dinner. While descending a long straight section of the highway, at approximately 60 miles per hour, Reeves noticed Markle's vehicle, a Ford Pinto, preceding him in the right hand lane. At this time, Reeves was about a quarter of a mile behind the car, which was weaving as it moved along the road at approximately forty miles per hour. Reeves activated the left turn indicator on his truck and began to change lanes in order to pass Markle, but Markle's car pulled into the left lane blocking Reeves' path. Without slackening his speed, or sounding a warning, Reeves attempted to pass using the right hand lane. Markle again pulled in front of him, and the right front fender of the truck collided with the rear of the car almost immediately. Reeves claimed he attempted to avoid the accident by swerving into the left lane, but that the vehicles impacted during the maneuver. The accident reconstruction expert, on the other hand, testified that neither vehicle braked nor made any sharp turns prior to impact. Rather, he believed the physical evidence indicated that Reeves was making a gradual passing maneuver to the left when the impact occurred. Regardless, Markle's car spun and tumbled off the highway, ejecting the driver who subsequently died.

The new trial order included both general and specific grounds. For purposes of review, we will assume the trial judge relied solely on the specific grounds. *Estabrook v. J. C. Penney Company*, 105 Ariz. 302, 464 P.2d 325 (1970). One of the specific grounds cited by the trial court was its failure to instruct the jury on the theory of last clear chance.

### Last Clear Chance

*Odekirk v. Austin*, 90 Ariz. 97, 366 P.2d 80 (1961), Arizona's leading case on the doctrine of last clear chance, set forth the elements of the theory as applied to this case:

"(a) The plaintiff has negligently subjected himself to a danger which he could have avoided by the exercise of reasonable vigilance; (b) the defendant actually saw or knew of the plaintiff's situation and realized or ought to have realized that the plaintiff was inattentive, and (c) the defendant thereafter has a last clear chance to avoid injuring the plaintiff by the exercise of reasonable care and fails to do so." 90 Ariz. at 102, 366 P.2d at 83.

The facts of this case satisfy the first of the above elements. If Markle had

been vigilant, he would have been aware of the approaching traffic which posed a danger to him if he failed to obey the rules of the road and continued his weaving. However, following a thorough review of the record we do not believe the second and third elements were satisfied by the evidence. The sequence of events was inadequate to have alerted Reeves that Markle was inattentive until the final lane change. At that point, Reeves tried to turn and slow his vehicle, but it was too late to avoid the accident. Accordingly, there was no last clear chance. *Schneider v. Macari*, 111 Ariz. 483, 533 P.2d 540 (1975).

### Expert Testimony

Another specific ground relied on by the trial court in its new trial order was the court's refusal to allow a qualified expert to state his conclusions as to the speeds of the vehicles. Outside the presence of the jury, appellee's accident reconstruction expert offered testimony as to the speed of the vehicles at impact and upon their separation. Appellant objected to this evidence, and the court withheld it from the jury. The expert, Mr. Larmour, testified he had all the facts necessary to establish, with a reasonable degree of certainty, the range of speeds of the vehicles at impact and at separation. Yet the court rejected the offered evidence because no person had witnessed exactly what happened to the Pinto after impact, and therefore the court concluded that the expert's testimony would amount to "pure speculation". This objection to Mr. Larmour's calculations only goes to the weight of the evidence not its admissibility, because adequate facts were in evidence for him to formulate a reasonably certain opinion. *Bullard v. Stonebreaker*, 101 Ariz. 584, 422 P.2d 700 (1967); *Ball Corporation v. George*, 27 Ariz.App. 540, 556 P.2d 1143 (1976).

Appellant also contends the opinion of Mr. Larmour was objectionable because his conclusions were based in part on hearsay—controlled collision studies by U.C.L.A., Texas A. & M., Cornell, and by the Institute of Transportation and Traffic Engineering. Larmour utilized these studies to provide the coefficient of friction applicable to a rolling vehicle. In objecting to the testimony, appellant relies on the general rule set forth in *Gillespie Land and Irrigation Company v. Gonzalez*, 93 Ariz. 152, 379 P.2d 135 (1963); and *Schmidt v. Gibbons*, 3 Ariz.App. 147, 412 P.2d 716 (1966). At the time of those cases, the general rule apparently was that an expert could not base his opinion upon the inferences or conclusions of others. Yet, both *Gillespie* and *Schmidt* permitted the expert to form opinions based on other's opinions, previously admitted in evidence. Those courts concluded that a party could cross examine the witness offering the initial conclusion in order to probe and uncover its inherent weaknesses, thus no logical reason remained to exclude an opinion based in part on another's opinion which had been scrutinized before the jury. These cases, however did not squarely meet the issue here presented.

The reason underlying excluding an expert's opinion based on another's opinion not in evidence is simply that one's opponent is deprived of the opportunity to cross examine the proponent of the original opinion. "The essential objection seems to be that the jury is asked to accept as evidence the witness' inference, based upon someone's hearsay assertion of a fact which is, presumably, not supported by any evidence at the trial and which therefore the jury has no basis for finding to be true". McCormick on Evidence, §§ 15, 34 (2d Ed. 1972). "Of course, almost all expert opinion embodies hearsay indirectly, a matter which courts often recognize and accept". *Id.* at 36.

The latter statement reflects the issue *sub judice*. Clearly an expert's opinion which is based on the out of court statement of a witness to an accident presents the obvious hearsay problems, such as the inability of a jury to weigh the accuracy of the original opinion. *Gillespie Land and Irrigation Company v. Gonzalez*, 93 Ariz. 152, 379 P.2d 135 (1963). However, Mr. Larmour did not rely on a hearsay statement of facts concerning the accident, rather, he personally investigated the accident scene for his fact basis. To these facts he

applied standard engineering formulas and information from the controlled crash studies. He offered to demonstrate all his calculations for the court. Thus, he could have been cross examined as to his calculations and conclusions. Mr. Larmour's opinion concerning the speeds of the vehicles was not simply a statement or conclusion contained in the studies. Rather, he utilized reliable information from those studies to evaluate the physical evidence from the scene of the accident, just as any accident reconstruction expert must utilize the coefficients of friction for different types of road surfaces. If expert witnesses could not rely on information gained through their study of scientific literature because of its hearsay nature, then it would be virtually impossible for any expert to evaluate the facts presented in any lawsuit, because nearly everything a person has learned technically constitutes hearsay.

That an expert may rely on scientific studies and treatises in forming an opinion is supported by Professor Wigmore's conclusion that such materials are sufficiently trustworthy to form an exception to the hearsay rule.

"There is no need of assuming a higher degree of sincerity for learned writers as a class than for other persons; but we may at least say that in the usual instance their state of mind fulfills the ordinary requirement for the hearsay exceptions, namely, that the declarant should have 'no motive to misrepresent'. They may have a bias in favor of a theory, but it is a bias in favor of the truth as they see it; it is not a bias in favor of a lawsuit or of an individual. Their statement is made with no view to a litigation or to the interests of a litigable affair.

\*    \*    \*    \*    \*    \*

"The writer of a learned treatise publishes primarily for his profession. He knows that every conclusion will be subjected to careful professional criticism, and is open ultimately to certain refutation if not well founded; that his reputation depends on the correctness of his data and the validity of his conclusions; \* \* \*. The motive, in other words, is precisely the same in character and is more certain in its influence than that which is accepted as sufficient in some of the other hearsay exceptions \* \* \*.

"Finally, the probabilities of accuracy, such as they are, at least are greater than those which accompany the testimony of many expert witnesses on the stand. \* \* [T]hose who write with no view to litigation are at least as trustworthy, though unsworn and unexamined, as perhaps the greater portion of those who take the stand for a fee from one of the litigants". VI Wigmore on Evidence, § 1692, 6–7 (Chadbourn rev. 1976); *See also* McCormick on Evidence, § 321 (2d ed. 1972.) [1]

■ Because of the inherent trustworthiness of independent scientific studies, we hold that the opinion of a qualified expert witness as to the meaning of physical evidence found at the scene of an accident is admissible even though the expert relies in part on reliable independent scientific studies in his field of expertise. *Miller v. Travelers Insurance Company*, 111 Ga.App. 245, 141 S.E.2d 223 (1965); *State Roads Commission v. Creswell*, 235 Md. 220, 201 A.2d 328 (1964); *Urquhart v. Barnes*, 335 S.W.2d 666 (Tex.Civ.App.1960).

■ Rule 59(a), 16 A.R.S. Rules of Civil Procedure states, in part: "A verdict, decision or judgment may be vacated and a new trial granted on motion of the aggrieved party for any of the following causes *materially affecting his rights*: \* \* \* (6) Error in the admission or rejection of evidence \* \* \*". (Emphasis added.) We believe the trial judge correctly exercised his discretion by granting a new trial on account of the exclusion of this evidence. Without doubt, the speed evidence was critical to appellee's theory of negligence, and it was also necessary for impeachment purposes. Thus, the exclusion of this evidence caused a material defect in appellee's case. *Cf. Rhodes v. El Rancho Markets*, 9 Ariz.App. 576, 454 P.2d 1016 (1969).

1. This view is reflected in the "new" Arizona Rules of Evidence, Rules 703, 803(18).

Whenever a new trial order is justified by any of the grounds cited in the order, an appellate court will not disturb the lower court's exercise of its discretion. *Johnson v. Elliott*, 112 Ariz. 57, 537 P.2d 927 (1975); *Cano v. Neill*, 12 Ariz.App. 562, 473 P.2d 487 (1970). We therefore affirm the new trial order, because of the foregoing issue.

### Rule 59(m)

Normally, when a new trial order is affirmed on one of its stated grounds, it is not necessary to consider the remaining issues. *Arizona Refrigeration Supplies, Inc. v. Brookshire*, 13 Ariz.App. 481, 477 P.2d 767 (1970). However, an additional issue remains which requires our attention at this time. In its opinion, the Court of Appeals has expressed some confusion as to the proper standard for reviewing a new trial order which lacks the particularity required by Rule 59(m), Rules of Civil Procedure, 16 A.R.S.

If the order *sub judice* had not presented specific grounds in addition to the trial court's finding "the verdict of the jury is not justified by the evidence and contrary to the great weight of the evidence", we would presume "that the verdict of the jury was correct, placing the burden upon the appellee to convince us that the trial court did not err in ordering a new trial". *Yoo Thun Lim v. Crespin*, 100 Ariz. 80, 83, 411 P.2d 809, 811 (1966). From this postulate, the Court of Appeals concluded "the presumption that the jury verdict was correct is conclusive if there is *any* evidence to sustain it". (Emphasis ours.) *Reeves v. Markle,* 119 Ariz.App. 170, 174, 580 P.2d 2, 6 (1977). Such a standard would place a virtually impossible task upon the appellee. Rarely does a case reach the trial stage if a party does not have some evidence in support of his theory. Thus, even though a party could demonstrate "that the verdict, * * * or judgment [was] not justified by the evidence or [was] contrary to law" 16 A.R.S. Rules of Civil Procedure, Rule 59(a) (8), he could not sustain the decision of the trial court on appeal if the opposing party had presented *any* evidence. We do not believe Rule 59(m) was intended to produce such results.

In Arizona, the trial judge has always sat as a "thirteenth juror". *Brownell v. Freedman*, 39 Ariz. 385, 6 P.2d 1115 (1932). The judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record. For this reason he is accorded broad discretion in granting a new trial. *City of Glendale v. Bradshaw*, 114 Ariz. 236, 560 P.2d 420 (1977).

Due to his unique position, the trial judge has become the primary buffer against unjust verdicts. He performs an indispensable function without which our system of justice could not hold out the promise of an uniform application of the law. The necessity of this power to grant a new trial was recognized by Lord Mansfield over two centuries ago.

"Trials by jury, in civil causes, could not subsist now, without a power, somewhere, to grant new trials.

\* \* \* \* \* \*

"There are numberless causes of false verdicts, without corruption or bad intention of the jurors. They may have heard too much of the matter, before the trial; and imbibed prejudices without knowing it. The cause may be intricate; the examination may be so long as to distract and confound their attention.

\* \* \* \* \* \*

"Most general verdicts include legal consequences, as well as propositions of fact: in drawing these consequences, the jury may mistake, and infer directly contrary to law.

\* \* \* \* \* \*

"If unjust verdicts, obtained under these and a thousand like circumstances, were to be conclusive forever, the determination of civil property, in this method of trial, would be very precarious and unsatisfactory. It is absolutely necessary to justice, that there should, upon many

occasions, be opportunities of reconsidering the cause by a new trial." *Bright v. Eynon*, 1 Burr. 390, 393, 97 Eng.Rep. 365, 366 (1757).

■ When exercising this broad discretion by granting a new trial, a judge must record his reasons with particularity in the new trial order. Rule 59(m), Rules of Civil Procedure, 16 A.R.S. Rule 59(m) and its correlative rule announced by *Yoo Thun Lim*, are designed to insure that both parties and the appellate courts receive adequate notice of the grounds on which the trial court relied. *Yoo Thun Lim v. Crespin, supra* ; *Estabrook v. J. C. Penney Company, supra*. Such notice was meant to facilitate the disposition of appeals. *Pima County v. Bilby*, 87 Ariz. 366, 351 P.2d 647 (1960). However, we do not believe Rule 59(m) was intended to limit the discretion of a judge to order a new trial. *See Heaton v. Waters*, 8 Ariz.App. 256, 445 P.2d 458 (1968). Yet, this would be the ultimate effect of the standard proposed by the Court of Appeals in cases where the new trial order was not drafted with sufficient particularity.

■ If the trial court fails to satisfy Rule 59(m), then the appellee has the burden on appeal "to convince us that the trial court did not err in ordering a new trial". *Yoo Thun Lim v. Crespin*, 100 Ariz. at 83, 411 P.2d at 811. This burden which is placed on the appellee, however, does not alter the discretion which the trial judge possessed at the time he granted the new trial. The power of a judge to grant a new trial is the same regardless of the particularity of the language of the new trial order, *compare* Rule 59(a) *with* Rule 59(m). To properly exercise this power, the trial judge must determine in his own mind whether the evidence preponderates against the verdict. Since we are not privy to all that occurred during a trial, we refrain from attempting to weigh the evidence on review. However, it remains our duty to supervise the granting of new trials and to insure that the exercise of a trial court's broad discretion has a legal rather than an arbitrary basis. *Estabrook v. J. C. Penney*

*Company, supra*. In performing this duty, we inquire whether substantial evidence exists to support the trial court's determination. If this is answered in the affirmative then the new trial order is affirmed as being within the sound discretion of the trial court. In other words, the burden which is placed on the appellee when a new trial order fails to satisfy Rule 59(m) is to demonstrate that the probative force of the evidence was sufficient to bring the trial court's sound discretion into play. *See Brooks v. De La Cruz*, 12 Ariz.App. 591, 473 P.2d 793 (1970); *Powell v. Klein*, 11 Ariz. App. 360, 464 P.2d 806 (1970). If the appellee is able to so demonstrate, then the presumption of the jury's verdict being correct is overcome. Therefore, we reject the Court of Appeals' proposed "any evidence" standard, as it could thwart the discretionary power of the trial court to grant a new trial in cases where the verdict was contrary to the weight of the evidence. This interpretation of the Rules of Civil Procedure and *Yoo Thun Lim v. Crespin, supra*, is in accordance with the purpose of the Rules of Civil Procedure—the abolishment of technicalities to secure a just determination of every action. *Dons Club v. Anderson*, 83 Ariz. 94, 317 P.2d 534 (1957).

We have affirmed the new trial order because one of its stated grounds proved to be correct. However, it was necessary to briefly consider the effect of a court's failure to comply with Rule 59(m), 16 A.R.S. Rules of Civil Procedure. We have rejected the Court of Appeals' proposed standard as being too harsh of an interpretation of *Yoo Thun Lim v. Crespin*, 100 Ariz. 80, 411 P.2d 809 (1966), in order to protect the discretionary power of superior court judges to order a new trial.

The opinion of the Court of Appeals is vacated and the order of the superior court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.