473 P.2d 793

**Walter Lee BROOKS, Appellant,**

v.

**Emilia DE LA CRUZ, a Minor by her Guardian ad Litem, Concha de la Cruz, Appellee.**

**No. 1 CA–CIV 953.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 2, 1970.

Rehearing Denied Sept. 28, 1970.

Review Denied Nov. 10, 1970.

**592**

walk at the time. She was five years old, and in the company of her aunt, Lorenza Dominguez, age 16, who had taken Emilia to Mass at a nearby church. The accident occurred at about 12:00 noon on a Sunday. East Washington Street is a five-lane, one-way street at the point in question, with a maximum speed limit of 35 miles per hour carrying traffic in a westerly direction. The pedestrian cross-walk where Emilia was injured is on the east side of the intersection of 9th Street (which runs north and south) and East Washington. Emilia and her aunt were crossing East Washington from north to south. The accident occurred in the "fifth" or southernmost lane of traffic, after Emilia had "broke away" from her aunt's grip. The general defense was that a car which overtook defendant's vehicle on his right so obscured his vision that he did not see Emilia until it was too late to avoid the accident. We will discuss the facts later in the opinion in further detail.

At the trial, the only major "liability" witness for the plaintiff was her aunt, Miss Dominguez. Miss Dominguez gave her testimony in Spanish, and was questioned and heard by means of a court-appointed interpreter. The trial ended in a jury verdict for defendant. On plaintiff's motion, the trial court granted a new trial for the following stated reasons:

> "IT IS HEREBY ORDERED granting plaintiff a new trial for the reason that the verdict rendered in this action is not justified by the evidence and that plaintiff has been denied a fair trial due to the incompetence of the court-appointed interpreter upon the trial and said interpreter's inability to properly translate the testimony of plaintiff's principal witness."

Thus, two separate grounds are stated in the order. The first ground—that the verdict "is not justified by the evidence"—is stated in the terms of the first part of subparagraph (8) of Rule 59(a) of our Rules of Civil Procedure, 16 A.R.S. The second stated ground refers to the general

Jennings, Strouss & Salmon, by Michael A. Beale, Phoenix, for appellant.

Harold Goldman, Phoenix, for appellee.

JACOBSON, Judge.

We review an order granting the plaintiff-appellee a new trial. We will refer to the parties as they were in the trial court.

The minor plaintiff, Emilia de la Cruz, was injured near the end of her journey across East Washington Street in the City of Phoenix when she was struck by an automobile driven by the defendant Walter Lee Brooks. Emilia was in marked cross-

ground embodied in subparagraph (1) of Rule 59(a), applicable when a party has for various reasons been deprived of a fair trial in the view of the trial judge.

■ We do not think that either one of the stated grounds is stated with sufficient particularity to be in compliance with Rule 59(m), which provides as follows:

> "*59(m) Specification of grounds of new trial in order.* No order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted."

The term "with particularity" in Rule 59 (m) means "in a detail." Yoo Thun Lim v. Crespin, 100 Ariz. 80, 82, 411 P.2d 809, 810 (1966), *quoting* Webster's Third International Dictionary.

■ The first ground of the order is phrased in the unembellished and unenlarged-upon language of the first half of Rule 59(a) (8), and plainly it cannot meet the 59(m) test. The second ground stated comes a little closer to compliance but, in our view, whether or not a stated ground is sufficiently particularized is necessarily somewhat dependent upon the complexity of the circumstances to which the stated ground is addressed. Here, from the record it is apparent that plaintiff's counsel at the trial spoke and understood Spanish well. The record fails to reveal that he made any objection to the qualifications of or the interpretations rendered by the interpreter, and there was no mention of the interpreter in plaintiff's motion for new trial. The record does not show whether the trial judge was or was not conversant in Spanish. Considering that 59(m) is "designed to serve a practical purpose and should receive a practical construction," Heaton v. Waters, 8 Ariz.App. 256, 260, 445 P.2d 458, 462 (1968), more is required under the circumstances than a general statement that the interpreter was incompetent and unable to translate properly Miss Dominguez' testimony.

Here, we are not advised with any particularity as to *how* the generally-stated incompetency or inability of the interpreter in his translation of Miss Dominguez' testimony operated against the plaintiff. A brief list of examples or statement of judicial impressions would undoubtedly suffice. Or if, for example (if such were the case), the trial judge had stated that in his view, the necessity of counsel assisting the interpreter by suggesting alternative translations resulted in jury confusion as to just what was and was not the testimony of the witness herself, we would then have an adequately detailed idea of the specific factor or factors which prompted the trial judge to exercise his discretion on this ground. Whatever the activating circumstances were, *something* more than that stated is necessary to enable us to review the matter intelligently

■ Thus, while general grounds have been stated and the order is therefore not a nullity, *cf.* Estabrook v. J. C. Penny Co., 105 Ariz. 302, 464 P.2d 325 (1970), we must under *Yoo Thun Lim, supra,* assume that the verdict was correct and that the trial judge was in error in granting a new trial. This means that the burden is upon the plaintiff-appellee to persuade us that the trial judge had a properly exercisable discretion to grant a new trial on one of the two generally state ᶜ grounds.

■ We turn our attention to the stated ground that the verdict was not justified by the evidence. This, in essence, is viewed as a determination by the trial judge that the verdict is against the weight of the evidence. *See* Cano v. Neill, 12 Ariz.App. 562, 473 P.2d 487 (Filed August 11, 1970), citing State v. Ross, 97 Ariz. 51, 53–54, 396 P.2d 619, 620–621 (1964), and General Petroleum Corp. v. Barker, 77 Ariz. 235, 243, 269 P.2d 729, 734 (1954). Had there been a compliance with 59(m), we would affirm if the evidence appeared tous merely "equiponderant," *see* Cano v. Neill, *supra,* but since there was no such compliance, it is incumbent upon plaintiff

to persuade us that the weight of the evidence pointed to a verdict in her favor.

Whether plaintiff has carried this burden must be judged within the framework of the relevant legal context. Here, the plaintiff was in a marked crosswalk where she had the right of way. A.R.S. § 28–792. It has been said that "[a] right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced." Taggart v. Vogel, 3 N.Y.2d 58, 163 N.Y.S. 2d 674, 143 N.E.2d 390 (1957), quoting from prior authority. Concededly, the infant plaintiff could not be guilty of contributory negligence, so that the sole issue was whether the injury was the result of defendant's negligence.

In Pearson & Dickerson Contractors, Inc. v. Harrington, 60 Ariz. 354, 137 P.2d 381 (1943), and again in Young Candy & Tobacco Co. v. Montoya, 91 Ariz. 363, 372 P.2d 703 (1962), our Supreme Court approved the following principles, which were set forth in a jury instruction in *Pearson & Dickerson, supra,* at 60 Ariz. 360, 137 P.2d 383–384:

"You are instructed that an owner of an automobile or truck has the right to use the highways of the state, provided in using them he uses reasonable care and caution for the safety of others. It is the operator's duty to keep his motor vehicle always under control so as to avoid a collision with others using the highway and he has no right to assume that the road is clear, but under all circumstances and at all times must be vigilant and must anticipate and expect the presence of others. And if he fails to use such reasonable care and caution and thereby injures another, such failure on his part would constitute negligence and he would be liable ir damages for any injury caused by his negligence."

"You are instructed that pedestrians have a right to travel anywhere upon a public highway and an automobile driver is required to drive carefully to prevent danger to others using the highway. The driver has no right to assume that the road is clear, but under all circumstances and at all times must be vigilant and must anticipate the presence of others and keep his machine under such control as will enable him to avoid collision with other persons using proper care and caution. * * *"

In the *Young Candy* case, *supra,* the Supreme Court stated that "[we] now reaffirm, that this instruction correctly states the law in this jurisdiction and in the public interest we see no reason to change it." 91 Ariz. at 367, 372 P.2d at 705.

*See also,* Daley v. Stephens, 64 Wash.2d 806, 394 P.2d 801, 804 (1964), a pedestrian crosswalk case, quoting prior authority to the effect that:

" 'If the conceded right of way means anything at all, it puts the necessity of continuous observation and avoidance of injury upon the driver of the automobile when approaching a crossing.' "

At the trial Miss Dominguez testified that defendant's car was the only vehicle approaching the intersection as she and Emilia were traveling over the northerly lanes of the crosswalk. She testified that defendant's car speeded up as they approached the fifth or southernmost lane of traffic, and that Emilia then became frightened or excited and "broke away" from her grip and ran toward the south curb which she did not reach before being struck by defendant's vehicle. Defendant, on the other hand, testified that there was a second car in the "fourth" lane or the lane immediately adjacent to the north of the one in which he was travelling. He further testified that he had been traveling at 35 miles per hour, but that he had slowed down to 20 miles per hour by the time he reached the crosswalk, because he was intending to turn left and go south on Ninth Street. Defendant stated that the second car gradually passed his car on the right as he was slowing down. He also stated that this second car had gone on through the intersection by the time his car reached the crosswalk. Defendant testified that he did not see Emilia until she was "[a]bout

a yard or so" in front of his car, directly in front of the right front headlight. The evidence also indicated that defendant could see all of the intersection when he was but one block away from it.

Ignoring the most obvious conflicts in the testimony, defendant's explanation does not clearly account for his failure to see the plaintiff until she was but "a yard or so" in front of his car. No doubt the second car might have obscured defendant's view of plaintiff for some period of time as it overtook defendant's vehicle. But since Emilia could neither have walked nor run through or over the second car, it must have cleared the crosswalk some appreciable increment of time prior to the time that defendant saw Emilia about one yard in front of the right side of his car. Apart from the second car, there were no other obstructions to defendant's vision. Thus, even if we were to indulge an assumption that the second car was constantly in such a position as to obscure Emilia as it approached the crosswalk—after defendant had passed the beginning of the block immediately east of Ninth Street where he had full vision, and during the time in which Emilia and her aunt were walking hand-in-hand over several lanes of East Washington Street—there still appears to have been a lag in defendant's perception of Emilia as she was crossing the fourth lane of traffic.

Under the law, defendant had no right to assume that the road was clear, and had the duty under all circumstances and at all times to be vigilant and anticipate the presence of others and to keep his vehicle under such control as would enable him to avoid collision with other persons using proper care and caution. *Pearson & Dickerson* and *Young Candy, supra.* Under the law, also, plaintiff had a superior right to be where she was and she could not have been negligent in placing herself there. Viewed in this legal context, the evidence adduced was such that it was within the discretion of the trial judge, sitting as the proverbial "thirteenth juror," to grant plaintiff's motion for a new trial on the first ground stated. There is no necessity for us to discuss the second ground.

The order granting a new trial is affirmed.

EUBANK, P. J., and HAIRE, J., concur.