760 P.2d 612

**Ralph LIBERATORE, a single man, Plaintiff–Appellant,**

v.

**Ennis THOMPSON and Marcia Thompson, husband and wife, Defendants–Appellees.**

**No. 1 CA–CIV 9212.**

Court of Appeals of Arizona, Division 1, Department B.

June 28, 1988.

Review Dismissed Sept. 15, 1988.

**614**

Snyder, Robens and Wenne by Howard M. Snyder and Paul G. Ulrich, Phoenix, for plaintiff-appellant.

Lewis and Roca by John P. Frank, Gary G. May, Janet Napolitano and Susan M. Freeman, Phoenix, for defendants-appellees.

## OPINION

FIDEL, Judge.

Plaintiff Liberatore won a jury verdict of $90,000 in compensatory damages and $500,000 in punitive damages for injuries suffered in an automobile accident. Plaintiff appeals from the trial court's order granting defendants Thompsons' motion for new trial.

Defendants neither contested their liability nor their susceptibility to punitive damages. Ennis Thompson admitted that he was driving while intoxicated, that he struck a car driven by Liberatore, and that the accident was entirely his fault. The Thompsons' defense was that the accident did not cause the lower back injury for which Liberatore claimed damages. They argued that Liberatore injured his back while lifting a heavy box several months after the accident. The Thompsons also contested the extent and severity of the back injury and the amount of punitive damages.

The trial judge gave the following reasons for granting a new trial:

The court finds that new trial is granted because of improper statements made by plaintiff's counsel in his opening and closing arguments; and because plaintiff's counsel violated the Motion *in Limine* in regard to traffic citations; that cumulatively, this prevented a fair trial. Plaintiff's argument in regard to future medical expenses was improper because

the Court had granted a Directed Verdict on that issue. The compensatory damage award was obviously tainted, in that the jurors added $15,000 more than what plaintiff's counsel asked for in his closing, the $15,000 being the figure mentioned as future medical expenses; and, the punitive damage award is excessive.

Plaintiff argues on appeal that the trial court failed to state with adequate particularity its basis for granting a new trial, that the defendants waived their grounds for seeking a new trial, and that the trial court's stated grounds do not support the new trial order.

Before considering these issues, we examine the record concerning the improprieties cited in the new trial order.

## A. IMPROPRIETIES IN OPENING AND CLOSING ARGUMENT

### 1. *Violation of the court's order in limine*

The defendants moved *in limine* that the plaintiff be precluded from offering evidence pertaining to Ennis Thompson's state of intoxication when apprehended at his home after the collision. The defendants also moved that the plaintiff be precluded from introducing evidence of the citations that Thompson received after the collision.

Thompson had fled the accident scene, but police found his license plate and traced him to his home. The accident had occurred shortly after 10:30 p.m.; the police reached his home approximately one hour later. There they found him fully clothed, passed out on a bed in a spare bedroom. His wife told police that he had consumed six alcoholic drinks *after* arriving home. Plaintiff's counsel wished to prove and argue that Thompson was cited only for leaving the scene of an accident, driving without a license, illegal lane change, and illegal left turn, that he had escaped being charged with or tried for driving while intoxicated, and that he had resolved all charges without trial by paying a $400 fine. Plaintiff's counsel also wanted to introduce evidence that the investigating officers had declined to charge Thompson with driving

while intoxicated (DWI) because Mrs. Thompson's assertion that he had consumed six alcoholic drinks after arriving home precluded proving by blood test whether or to what extent Thompson was intoxicated at the time of the collision.

The trial court ruled *in limine* that the plaintiff could introduce evidence of Thompson's state of intoxication when found by the police and of Mrs. Thompson's comment concerning the amount of alcohol he had drunk upon coming home. Such evidence, the trial court ruled, might be relevant to show that Thompson had no concern over his conduct or that he had intentionally tried to cover up his intoxication at the time of the accident. The court also permitted plaintiff's counsel to introduce evidence that Thompson paid only a $300 or $400 fine as a result of his conduct and to argue that additional punishment was warranted. The court expressly precluded evidence or argument, however, concerning the citations that lay behind the fine. Counsel was explicitly directed not to introduce evidence or argue that Ennis Thompson was not cited for DWI and not to introduce evidence or argument concerning the citations he received. The court stated, "You can mention that as a result of this incident he paid a fine of $3[00] or $400, *period.*"

Plaintiff's trial counsel, Howard M. Snyder, proceeded directly to violate this order in opening statement:

Officer Rogers will also testify that when he was interviewing Marsha Thompson, she told him that he, the defendant, came home and when he was home he drank six drinks. So, the officers were kind of in a quandary what to do. They couldn't prove that he was legally intoxicated when he drove, and as a result he was not involved with a criminal DWI.

Defendants' counsel did not object during opening statement, but moved for mistrial upon its conclusion. The trial court found that plaintiff's counsel had violated the order *in limine* and posed the question "whether or not at this point in time it's so prejudicial that we need a new jury." The court proceeded to deny the motion for mistrial, but indicated that he would continue to "think about it overnight."

At closing argument, plaintiff's counsel once again violated the trial court's order and went beyond the record:

Whatever you decide today, Ennis Thompson will not go to jail. You heard the evidence, he never had a criminal trial out of the events that arose on February 16, 1984. He went to his attorney the day after the crash and his attorney was able to arrange for him to pay a fine of approximately $400.00 for two automobile crashes involving a drunken driver who hit and run and left the victims behind without a care as to what condition they were in, without inquiring as to whether they needed medical assistance.

Unfortunately, the way the criminal system works, people like that often get off with a tap on the wrist. That's exactly what happened in this case. He was able to get a smart lawyer, a good lawyer who did a good job for him, but probably did a bad job for the community at large.

Defense counsel once again withheld immediate objection, but moved for mistrial on this and other grounds at the completion of plaintiff's counsel's argument. The court denied the motion, stating that he did not find counsel's violations "cumulative or prejudicial enough to do a mistrial at this point in the proceedings."

### 2. *Future surgical expenses*

Plaintiff's counsel discussed the costs and risks of future surgery in the course of closing argument:

You have heard Dr. Sucher testify in his opinion that this young man who is now 22 is going to have lower back problems into the future unless something significant is done such as injections to disolve the disc or such as back surgery.

You know what the risks are nowadays with those types of things. Every time you go into the hospital and are put under general anesthesia you are rolling

the dice and have no idea whether you are even going to wake up from it. . . .

Dr. Rand testified that the cost of a back operation for hospital, the surgeon's fee and the anesthesiologist would be 15[,000] to $16,000. Dr. Sucher was more conservative about it, he was talking five to $10,000. But, Dr. Sucher testified that the back surgery would not be the first thing that he would have Ralph undertake. He would try to use the injection to dissolve the disc. For the purpose of this we will give the defendant a break, the break he didn't give to Ralph. We won't put up numbers showing 15[,000] to 16,000 for surgery, but we will put up here is $5,000 for the procedure to dissolve the disc.

If you feel—after listening to the evidence that you believe Ralph may undertake surgery in the future, then you may want to add to that and you may want to put another $15,000 in there.

The defect in this argument was that no physician testified that the plaintiff would, in reasonable probability, undergo surgery in the future. Thus a proper foundation for such damages was lacking. *See, e.g., Saide v. Stanton,* 135 Ariz. 76, 77, 659 P.2d 35, 36 (1983).

Defense counsel again withheld objection until the conclusion of the argument, when he sought mistrial upon this and other grounds. The trial court incorrectly stated in its new trial order that it had "granted a Directed Verdict on [the future medical expenses] issue." A directed verdict had been neither sought nor granted on that issue. In ruling on the motion for mistrial, however, the court had commented on the impropriety of the argument, stating, "There is no evidence that this man is going to have to have surgery." The court concluded:

Whether it's prejudicial to the outcome of the case is the test really, and I don't think it is. I think it can be covered by [defense] counsel in his closing argument and, of course, if this were done in rebuttal then we might have a different situation. I caution you not to say those things in rebuttal.

Plaintiff's counsel did not reiterate a claim for future surgical expenses in rebuttal argument; he asked the jury to award "a minimum" of $75,000 in compensatory damages, an amount he calculated without inclusion of a sum for such expenses. Indeed, in charting damages, he stated, "We won't put up numbers showing $15[,000] to $16,000 for surgery, but what we will put up here is $5,000 for the procedure to dissolve the disc." Defendants neither asked for nor received a curative instruction directing the jury to exclude future surgical expenses from its calculation of compensatory damages. The jury awarded $90,000 in compensatory damages, which, as the trial court pointed out in its new trial order, exceeded the plaintiff's request by the amount that plaintiff's counsel had attributed to the costs of future surgery.

## B. PARTICULARITY

Rule 59(m), Arizona Rules of Civil Procedure, requires the trial court to specify its grounds for granting a new trial. The rule provides:

No order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted.

Liberatore argues that three of the trial court's grounds fail the particularity requirements of Rule 59(m): (1) improper statements in opening statement and closing argument, (2) violation of the order *in limine,* and (3) excessive punitive damages. Citing *Estabrook v. J.C. Penney Co.,* 105 Ariz. 302, 305, 464 P.2d 325, 328 (1970), he contends that, when the trial court lists both specific and nonspecific reasons for new trial, the nonspecific reasons must be disregarded. He urges that the trial court achieved adequate specificity only in finding compensatory damages tainted by improper argument over future surgical expense.

Rule 59(m), adopted in 1954, has evolved to its present form without substantial amendments. Its purpose is to facilitate the disposition of appeals. *Pima County v. Bilby,* 87 Ariz. 366, 373, 351 P.2d 647,

651–2 (1960). By requiring specification of the superior court, the rule narrows issues on appeal. *Id.* at 374, 351 P.2d at 652.

■ To advance the purpose of Rule 59(m), we apply four rules in reviewing new trial orders of varying specificity. (1) When the trial court states its grounds with adequate specificity, this court may not reverse unless a clear abuse of discretion is shown. *Pacific Guano Co. v. Pinal County Land Co.*, 1 Ariz.App. 34, 35, 399 P.2d 122, 123–24 (1965). The burden is upon *appellant* to affirmatively show that the trial court's stated reasons do not justify relief. *Santanello v. Cooper*, 106 Ariz. 262, 264, 475 P.2d 246, 248 (1970). (2) When the trial court sets forth grounds that fail the specificity requirement of Rule 59(m), the burden shifts to the *appellee* to show that the trial court did not err in ordering a new trial. *Reeves v. Markle*, 119 Ariz. 159, 164, 579 P.2d 1382, 1387 (1978). (3) When the trial court sets forth specific and nonspecific grounds, the reviewing court will ignore the latter and assume the trial court acted only upon the specific grounds. *Estabrook v. J.C. Penney Co.*, 105 Ariz. at 304–305, 464 P.2d at 327–328. (4) When no supportive ground is stated, the new trial order is a nullity. *Id.*

■ A ground for new trial is stated with sufficient particularity when the reviewing court is provided "an adequately detailed idea of the specific factor or factors which prompted the trial judge to exercise his discretion on this ground." *Brooks v. De La Cruz*, 12 Ariz.App. 591, 593, 473 P.2d 793, 795 (1970). Conversely, when the reviewing court is "compelled to speculate as to the reasons for ordering a new trial," the order fails to satisfy Rule 59(m). *Yoo Thun Lim v. Crespin*, 100 Ariz. 80, 83, 411 P.2d 809, 811 (1966). Applying this standard, we conclude that the trial court's statement, considered in the context of the record, meets the particularity requirements of Rule 59(m). *See Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 762 P.2d 609 (App.1988).

### 1. Improper statements made by plaintiff's counsel in his opening statement and closing argument

■ Liberatore compares this facet of the trial court's order to an order reviewed in *Rogers v. Mountain States Telephone & Telegraph Co.*, 100 Ariz. 154, 412 P.2d 272 (1966), where the trial court identified "misconduct of counsel" as a ground for new trial. In rejecting this ground as an adequate basis for upholding the trial court's order, the Arizona Supreme Court noted that the alleged misconduct occurred during an unreported final argument and that the trial judge failed to state the impropriety. Under these circumstances, the court held, it was impossible to determine whether the conduct was improper. 100 Ariz. at 162–163, 412 P.2d at 278.

In contrast to *Rogers*, the record in this appeal contains the opening statement and closing argument. Moreover, neither the parties nor this court need "search the record to speculate on a possible basis for the trial court's conclusion." *Yoo Thun Lim v. Crespin*, 100 Ariz. at 86, 411 P.2d at 813. The record clearly discloses that the court regarded as improper plaintiff's counsel's reference to Thompson's avoidance of citation or trial for DWI and plaintiff's counsel's reference to future surgical expenses. Other portions of the new trial order expressly identify these parts of counsel's argument. Even if the first clause of the order, isolated from its context, lacks desirable specificity, it is clarified both by the remainder of the order and by the record.

### 2. Violation of the order in limine

Plaintiff complains that, although the new trial order refers to violation of the order *in limine*, it fails to explain how the alleged violation operated to defendants' prejudice. Plaintiff invokes *Brooks v. De La Cruz*, 12 Ariz.App. 591, 473 P.2d 793 (1970), for the proposition that the trial court's failure to identify the prejudice nullifies that ground.

■ We first observe that plaintiff has overstated the holding of *Brooks*. The trial court granted a new trial in that case

because certain testimony had not been competently translated from Spanish to English. This court reversed because neither the order *nor the record* demonstrated that appellant was prejudiced by the inadequate translation. *Brooks* does not stand, as plaintiff suggests, for the proposition that the trial court must always detail prejudice to meet the particularity requirements of Rule 59(m). Where the record reveals the prejudice, that will suffice.

■ This record contains the motion *in limine,* counsel's arguments for and against it, the order *in limine,* and the trial court's statements concerning the violation of its order. A lawyer who resists a motion *in limine,* fails to persuade the court, and then proceeds to violate the trial court's order needs no explanation of resulting prejudice. Thus, even if we agreed with plaintiff's premise that the trial court failed to identify the prejudice, we would find the record sufficiently specific to advise plaintiff and this court of the trial court's reason for granting a new trial on this ground.

We disagree, however, that the trial court gave no indication of prejudice in its new trial order. We do not read that order, as plaintiff would have us do, as a cluster of isolated, unrelated parts; rather, we read it as an integrated whole, grounded in the record.

The record of argument of defendants' motion for mistrial after opening statement contains the trial court's question "whether ... *at this point* in time [plaintiff's counsel's violation of the motion *in limine* is] *so prejudicial* that we need a new jury." The court denied mistrial after similar violations in closing argument with the comment that the improprieties were not *"cumulative or prejudicial enough* to do a mistrial *at this point* in the proceedings." (Emphasis added.) From these observations, it is apparent that the trial court contemporaneously regarded counsel's comments as prejudicial to some degree and, though prepared to let the trial go forward, reserved final judgment on the ultimate impact of those comments.

In their motion for new trial, defendants urged the court to reconsider the prejudicial impact of counsel's statements in light of the damages awarded by the jury. Challenging the jury's compensatory and punitive damage verdicts as "grossly disproportionate" to the evidence, defendants sought alternative relief. Their primary argument was that the verdicts manifested the prejudice that had resulted from improper argument; on this basis, they argued for new trial. Alternatively, they sought remittitur, but only in the event that the court agreed that the damage verdicts were excessive, but disagreed that they were infected by prejudice.

The court did not grant remittitur; it granted a new trial. Thus it obviously accepted the first of the defendants' alternative positions. In its new trial order the court expressly found that improper argument and violation of its order *in limine* had "cumulatively ... prevented a fair trial." We read the remainder of its order as summarizing the prejudicial consequences of counsel's violations—excessive punitive damages and compensatory damages which exceeded plaintiff's counsel's request by an amount unsupported by the evidence.

### 3. *Excessive punitive damages*

■ Plaintiff next, however, challenges as inadequately specific the trial court's finding that "the punitive damage award is excessive." That finding, plaintiff argues, merely repeats the language of Rule 59(a)(5) and does not satisfy Rule 59(m). Plaintiff once again cites *Rogers,* where the court held a new trial order deficient for stating only that "the judgment was not justified by the evidence" without "specify[ing] in any detail wherein there was a lack of evidence from which the jury could infer negligence." 100 Ariz. at 164, 412 P.2d at 279. Plaintiff also cites *Nordensson v. Nordensson,* 146 Ariz. 544, 707 P.2d 948 (App.1985), in which this court found "ineffectiveness of counsel" too conclusory a statement to meet Rule 59(m) requirements.

Neither *Rogers* nor *Nordensson* deals with a trial court's finding that a damage

award is excessive. In *Phoenix Title & Trust Co. v. Arizona Public Service Co.*, 8 Ariz.App. 221, 445 P.2d 169 (1968), this court held that such a finding met the particularity requirements of Rule 59(m). We stated, "[T]hat an award was excessive can be apparent to the trial court without the trial court being able to state by what amount it was excessive." 8 Ariz.App. at 224, 445 P.2d at 172. In a complementary case, *State ex rel. Herman v. Hague*, 10 Ariz.App. 404, 459 P.2d 321 (1969), we held Rule 59(m) satisfied by the simple statement that the verdict was insufficient. In reliance upon these cases, we find that the trial court stated with adequate specificity its conclusion that punitive damages were excessive.

### 4. *Conclusion as to particularity*

The purpose of Rule 59(m) is to give the parties and this court notice of the basis for new trial. *Yoo Thun Lim v. Crespin*, 100 Ariz. 80, 83, 411 P.2d 809, 811 (1966); *Heaton v. Waters*, 8 Ariz.App. 256, 258, 445 P.2d 458, 460 (1968). Once the order does so, the particularity requirement is satisfied. As stated in *Heaton*, "[w]e do not believe that our supreme court intends to require the trial judge to render a written opinion setting forth his rationale for granting a new trial motion or to undertake a lengthy review of the facts. Rule 59(m) is designed to serve a practical purpose and should receive a practical construction." 8 Ariz.App. at 259–60, 445 P.2d at 461–62. We find that the parties and this court were sufficiently informed of the trial court's reasons for granting a new trial. Because the order complies with Rule 59(m), the burden does not shift to the defendants to defend it. Rather, the plaintiff retains the burden to show clear abuse of discretion. *Crowe v. Miller*, 27 Ariz. App. 453, 455, 555 P.2d 1141, 1143 (1976).

### C. WAIVER

The plaintiff next argues that the defendants were obliged to object to the misstatements by plaintiff's counsel during opening statement and closing argument if they wished to preserve those objections as a basis for new trial. Rule 51(d) of the Arizona Rules of Civil Procedure provides, "Interruption of counsel in argument will not be permitted, except for the purpose of raising a question of law." Objection is not only appropriate but desirable under that rule when opposing counsel begins "departing from the record, drawing illegitimate inferences, arguing facts not in the record or stating counsel's personal conclusions." *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 453, 652 P.2d 507, 526 (1982). Prompt objection permits the court to "impose restraints upon counsel once it appears that argument is proceeding past legitimate boundaries." *Id.*

■ A party who withholds timely objection and fails to request that the trial court admonish the jury to disregard the improper comments of an opponent does not preserve the objection as a ground for an appeal "[u]nless ... the misconduct was of so serious a nature that no admonition or instructions by the court could undo the damage." *Schmerfeld v. Hendry*, 74 Ariz. 159, 161, 245 P.2d 420, 421 (1952) (quoting *City of Prescott v. Sumid*, 30 Ariz. 347, 355, 247 P. 122, 125).

■ We do not find, however, that the defendants have waived the improprieties of plaintiff's counsel as a basis for upholding the trial court's new trial order. We have three reasons for this decision. First, however desirable it may be to make immediate objection to blatant improprieties under Rule 51(d), objection has generally been regarded as sufficiently timely in Arizona if presented before the case is submitted to the jury. *See Kelch v. Courson*, 103 Ariz. 576, 579, 447 P.2d 550, 553 (1968); *Beliak v. Plants*, 93 Ariz. 266, 269, 379 P.2d 976, 978 (1963); *Ahmed v. Collins*, 23 Ariz.App. 54, 58, 530 P.2d 900, 904 (1975).

Second, defendants' objections concerned in part the violation of an order *in limine*. We know of no rule, nor would we adopt a rule, that a lawyer has insufficiently preserved an objection to improper argument by embodying the objection in a successful motion *in limine* in advance of argument.

Third, the defendants do not come before this court as *appellants*, arguing that the

trial court erroneously evaluated their opponent's misconduct and asking that we *overturn* the trial court's denial of their motion for new trial. They come before this court as *appellees*, arguing that the trial court properly evaluated their opponent's misconduct and asking that we *sustain* the trial court's granting of their motion for new trial. According to long-standing Arizona practice, though a party risks forfeiting a potential ground for appeal by withholding prompt objection to an opponent's misconduct, he does not forfeit the right to assert such misconduct as a basis for sustaining the trial court's new trial order if the trial court finds the impropriety sufficient to warrant a new trial despite the absence of a prompt objection. *Sadler v. Arizona Flour Mills Co.*, 58 Ariz. 486, 489–90, 121 P.2d 412, 413 (1942); *see also Schmerfeld v. Hendry*, 74 Ariz. at 161–62, 245 P.2d at 421–22.

## D. REVIEWING THE TRIAL COURT'S CONCLUSION THAT THE MISCONDUCT AFFECTED THE RESULT

In a supplemental opinion in *Grant*, the supreme court reiterated the practice of appellate deference to the decisions of trial judges in questions whether misconduct of counsel has warranted the grant of a new trial:

> The trial court must make a factual determination of whether the misconduct has affected the result; as with most factual determinations, this is a matter within its discretion. We do not reverse that discretionary, factual finding unless the record clearly establishes that the trial court was incorrect.

133 Ariz. at 455, 652 P.2d at 528.

The court contrasted the ability of the trial court to gauge the impact of misconduct with that of a reviewing court, quoting *Reeves v. Markle*, 119 Ariz. at 163, 579 P.2d at 1386:

> The judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed

record. For this reason he is accorded broad discretion in granting a new trial.

> Due to his unique position, the trial judge has become the primary buffer against unjust verdicts. He performs an indispensable function without which our system of justice could not hold out the promise of [a] uniform application of law.

133 Ariz. at 455, 652 P.2d at 528.

■ The *grant* of a new trial is typically more deferentially reviewed than the *denial* of new trial. There are two practical reasons for this practice. First, "in the former the rights of the parties are never finally disposed of as in the latter they may be." *Sadler v. Arizona Flour Mills Co.*, 58 Ariz. at 490, 121 P.2d at 413; *accord Melcher v. Melcher*, 137 Ariz. 210, 212, 669 P.2d 987, 989 (App.1983). Second, we recognize that trial judges disfavor new trial motions and will generally grant them only with great caution. *See State v. Lukezic*, 143 Ariz. 60, 63, 691 P.2d 1088, 1091 (1984); *State v. Guthrie*, 108 Ariz. 280, 283, 496 P.2d 580, 583 (1972).

■ Reviewing the record in this spirit, we first find no basis for rejecting the trial court's finding that punitive damages were excessive. Although Ennis Thompson's income in 1984 was the subject of varying estimates, the highest was $38,000. Thompson estimated his net worth at $2200. Liberatore did not offer a higher estimate. However, there was evidence that Thompson had a good business and owned fully depreciated equipment worth "probably $5,000," a home with approximately $35,000 in equity, and various personal property including vehicles and furniture. Whether or not the jury regarded Thompson's own assessment of his net worth as unreasonably low, there was no basis in the evidence for concluding that his net worth even approached the jury's $500,000 punitive damage award. California has rejected a punitive damage award of approximately one third of a defendant's net worth, finding it "so greatly disproportionate to net worth that it is presumptively based upon passion or prejudice." *Merlo v. Standard Life & Accident Ins. Co. of*

*California,* 59 Cal.App.3d 5, 18, 130 Cal. Rptr. 416, 425 (1976). The evidence in this case suggests that the jury's award vastly exceeded the defendant's net worth. We observed in *Maxwell v. Aetna Life Ins. Co.,* 143 Ariz. 205, 219, 693 P.2d 348, 362 (App.1984),

> While the [punitive damage] verdict must be sufficient to punish and deter others in similar circumstances ... it must not financially kill the defendant.

That observation fits this case.

Plaintiff argues, however, that any disproportion between the defendant's wealth and the punitive damage award should be disregarded, because the defendants have insurance. We reject that argument. It is a defendant's own wealth, not his insurer's wealth, that bears on the proper level of punitive damages. Punitive damages are premised on the jury's expectation, sometimes a fiction, that the defendant himself will bear their punitive sting. We will not observe that premise to support the concept of punitive damages but abandon it to preserve a disproportionate award on the theory that "the defendant won't have to pay it anyway."

■ We next consider the trial court's conclusion that the compensatory damage award was "tainted." That a jury's award against a defendant exceeds the suggestion of plaintiff's counsel does not alone prove prejudice. In suggesting $75,000 as a minimum compensatory damage award, plaintiff's counsel did not preclude the jury from awarding a larger sum if greater damages were supported by the evidence. The trial court implicitly found, however, that the jury had awarded an unwarranted amount and that the problem could not be cured by a remittitur. The trial court further found, as we understand its ruling, that the jury had succumbed to the cumulative prejudice of improper argument when it exceeded the sum suggested by plaintiff's counsel by an amount projected as the cost of future surgery that the plaintiff had not proven he would probably need. We do not have the trial court's "special perspective of the relationship between the evidence and the verdict." *Grant,* 133

Ariz. at 455, 652 P.2d at 528. We defer to the trial court's judgment that the verdict revealed the taint of improper argument.

■ We come finally to the trial court's fundamental finding, that the misconduct of counsel warranted a new trial. We have reiterated past expressions of appellate deference to trial court judgment in these matters. The plaintiff suggests that our deference should be limited to the trial court's initial judgment that counsel's comments in opening statement and closing argument, though inappropriate, did not warrant a mistrial. The contemporaneous judgment, we are urged to find, was the better informed. But the trial court recognized in denying defendant's mistrial motions that the comments of plaintiff's counsel had been prejudicial to some degree. We do not give his initial weighing of the prejudice priority over his ultimate conclusion, informed by the verdict, that misconduct had cumulatively colored the result. *Compare Zugsmith v. Mullins,* 86 Ariz. 236, 344 P.2d 739 (1959) *with Mayo v. Ephrom,* 84 Ariz. 169, 325 P.2d 814 (1958).

## CONCLUSION

We conclude with a comment on the observation of orders *in limine.* An order *in limine* is a directive of avoidance, not a dare to "walk the line." And though an attorney may think the trial court's ruling incorrect, he must abide it; one may not "justify the violation of the trial court's order by arguing the wisdom of the order itself." *Taylor v. Southern Pacific Transportation Co.,* 130 Ariz. 516, 520, 637 P.2d 726, 730 (1981).

We do not suggest that plaintiff's counsel indulged in a deliberate violation in this case. The trial court made no such finding, and defendant's counsel acknowledged after opening statement that his opponent may have misunderstood the trial court's order. But an attorney should not enter the danger zone uncertain of his ground. Any doubt whether an order *in limine* reaches an intended line of evidence or comment should be aired and resolved in advance.

In this case, violation of the order *in limine* in opening statement was repeated in closing argument and accompanied by other excursions outside the record. We do not depart from our traditional rule that "[m]isconduct alone will not cause reversal, as a new trial should not be granted to punish counsel." *Grant*, 133 Ariz. at 457, 652 P.2d at 530, (quoting *State v. Ramirez*, 116 Ariz. 259, 265, 569 P.2d 201, 207 (1977)). However, where, as here, the trial court has found that the *outcome* was affected by misconduct, we customarily defer.

We conclude that the plaintiff has failed to meet its burden of affirmatively showing that the trial court abused its discretion or that its stated reasons do not justify a new trial. The order of the trial court is affirmed.

CONTRERAS, P.J., and GREER, J., concur.