NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BILLY BRUMETT, et al., *Plaintiffs/Appellee*s,

*v.*

MGA HOME HEALTHCARE, L.L.C., et al., *Defendants/Appellants.*

No. 1 CA-CV 15-0047
FILED 12-6-2016

---

Appeal from the Superior Court in Maricopa County
No.  CV 2010-092697
The Honorable David M. Talamante, Judge

**VACATED AND REMANDED**

---

COUNSEL

Gregory Law Group, Gilbert
By Robert M. Gregory
*Counsel for Plaintiffs/Appellees*

Law Offices of Broening Oberg Woods & Wilson, PC, Phoenix
By James R. Broening, T. Scott King, Michelle L. Donovan, Kevin R. Myer
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Acting Presiding Judge Samuel A. Thumma and Judge Mark R. Moran[1] joined.

---

**D O W N I E**, Judge:

**¶1**         MGA Home Healthcare, L.L.C. ("MGA") and Susan Bosman (collectively, "Defendants") appeal the superior court's order granting a new trial to Billy and Angela Brumett (collectively, "Plaintiffs").[2]  For the following reasons, we vacate the new trial order and remand to the superior court with instructions to enter judgment in favor of Defendants.

## FACTS AND PROCEDURAL HISTORY

**¶2**         MGA provided in-home nursing services for Connie Brumett.  Connie required 24-hour care and had a jejunostomy tube ("J-tube" or "feeding tube") through which medications and nutrients were administered.  Billy Brumett cared for Connie from 7:00 a.m. to 3:00 p.m.; Lois Hickenbottom was Connie's caregiver between 3:00 p.m. and 11:00 p.m.; and Susan Bosman, a licensed practical nurse employed by MGA, cared for Connie from 11:00 p.m. to 7:00 a.m.

**¶3**         On November 23, 2009, Billy left a note asking Bosman to adjust Connie's J-tube because it "kept migrating outwards."  With Hickenbottom's assistance, Bosman adjusted the J-tube.  Connie was admitted to the hospital the following day.  She underwent surgery, where it was determined she had a perforated jejunum.  The surgeon removed a "fairly stiff" tube with a sharp tip.  Connie remained hospitalized until her death on December 17, 2009.

---

[1]     Pursuant to Article VI, Section 3 of the Arizona Constitution, the Arizona Supreme Court designated the Honorable Mark R. Moran, Judge of the Arizona Superior Court, to sit in this matter.

[2]     Billy Brumett is Connie Brumett's husband, and Angela Brumett is Connie's daughter.  We refer to the Brumetts by their first names when necessary to distinguish between them.

¶4            Plaintiffs sued MGA and Bosman, alleging violations of the Adult Protective Services Act, Arizona Revised Statutes ("A.R.S.") sections 46-451, *et seq.* ("APSA"), wrongful death, fraudulent misrepresentation, and negligent misrepresentation.  The superior court entered summary judgment for Defendants on the APSA and misrepresentation claims.  The wrongful death claim proceeded to trial.

¶5            The jury returned a defense verdict, and Plaintiffs moved for a new trial.  The superior court granted a new trial based on two of the grounds urged by Plaintiffs: (1) Defendants' purported violation of a ruling on a motion in limine regarding Connie's J-tube; and (2) the court erroneously prevented Plaintiffs from presenting testimony "regarding the hardening of the feeding tube."

¶6            Defendants timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(5)(a).

## DISCUSSION

¶7            This Court reviews rulings on motions for new trial for an abuse of discretion.  *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 403, ¶ 88 (App. 2012).  "In our review, we 'scrutinize with care an order granting a new trial' because 'meaningful review in such cases is required to maintain the integrity of the jury trial system and the practical value of court adjudication.'"  *Id.* (quoting *Zugsmith v. Mullins*, 86 Ariz. 236, 237–38 (1959)).  However, "we generally afford the trial court wide deference because the judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record."  *Id.*

## I.        Plaintiffs' Motion in Limine No. 18

¶8            The first basis for granting a new trial was the superior court's conclusion that Defendants violated a pretrial ruling on Plaintiffs' "Motion *In Limine* No. 18 Re: Exclusion of All Testimony or Evidence that Plaintiffs Removed and/or Replaced the J-Tube from Decedent Connie Brumett" ("motion in limine no. 18").

¶9            Throughout the litigation, Defendants took the position that someone had substituted the J-tube Dr. Robert Schuster surgically inserted in July 2009 with a different tube.  Defense expert James Macho, M.D., testified at deposition it was "very unlikely" Connie's jejunum was perforated by "a standard jejunostomy tube," but opined that "[i]f

someone puts in a sharp, stiff tube, there's going to be a very high risk of a perforation." According to Dr. Macho, an "improper tube" — i.e., a tube different from the one Dr. Schuster inserted — caused the perforation.

¶10        In motion in limine no. 18, Plaintiffs asked the court to

> exclude all testimony or evidence that [Billy or Angela] accidentally, or on their own volition, removed the j-tube from Connie Brumett and/or replaced the j-tube inside of Connie Brumett at any time prior to the puncture in her jejunum, which also includes the exclusion of any testimony or evidence that [Billy or Angela] punctured Connie Brumett's jejunum as a result of the removal and/or replacement of her j-tube.

In a supplemental filing, Plaintiffs made clear they were not asking the court to preclude evidence or argument that Billy had *adjusted* or *reinserted* Connie's J-tube. They objected only to any evidence or argument that "somehow Billy Brumett had **_replaced_** his wife's j-tube with a different feeding tube during his care of her on or about November 23, 2009."

¶11        Defendants opposed motion in limine no. 18, arguing: (1) Dr. Schuster believed the tube removed in November 2009 was not the same tube he had inserted four months previously; (2) Billy told an emergency room physician (Dr. Geoffrey McKinzie) that Connie's J-tube had fallen out the day before her hospitalization and that he had "replaced" it;[3] (3) there was no evidence Bosman had substituted the J-tube Dr. Schuster inserted with "the sharp, stiff tube" later removed; and (4) a defense nursing expert opined that Billy inadvertently perforated Connie's jejunum when he reinserted the J-tube on November 23, 2009. Based on this evidence, Defendants argued, "a jury could well find that Mr. Brumett removed the soft and pliable J-tube and inserted the hard, sharp tipped tube."

---

[3]    Dr. McKinzie's emergency room note reads: "Per her husband, she had a J-tube that had fallen out yesterday that he had replaced by hand himself." The superior court ruled that "a fair reading in context" of this note was that Billy "re-inserted the feeding tube because it had fallen out." At trial, Plaintiffs introduced Dr. McKinzie's medical records into evidence — including this note — and published them to the jury.

¶12 The superior court granted motion in limine no. 18, precluding evidence that Billy or Angela replaced the J-tube Dr. Schuster surgically inserted with a different tube. The court ruled, in pertinent part:

> Defendants may not present evidence or argue that Plaintiffs removed or replaced the feeding tube but may argue and present evidence in support of their theory that Plaintiff Billy Brumett adjusted or re-inserted the feeding tube.

¶13 As particularly relevant here, the court's ruling did not preclude Defendants from arguing that *someone else* (other than Plaintiffs) had replaced Connie's J-tube. Indeed, the court adopted the following statement of the case to be read to prospective jurors:

> Plaintiffs claim that Defendant, Susan Bosman, perforated Connie Brumett's small intestine while advancing a feeding tube on November 23, 2009 resulting in her death.
>
> Defendants deny they were negligent or that their negligence caused Connie Brumett's death and the damages claimed by Plaintiffs. *Defendants assert that someone removed the soft, pliable tube surgically inserted on July 27, 2009 and replaced it with a hard, sharp-tipped tube that was removed during surgery on November 25, 2009.*

(Emphasis added). Thus, before trial, the superior court had ruled that although Defendants could not present evidence or argument that Billy or Angela removed or replaced Connie's J-tube, Defendants *could* present evidence and argument that "someone" had removed the J-tube implanted in July 2009 and replaced it with the tube removed during the November 2009 surgery.

¶14 Consistent with this ruling, the court overruled an objection to defense counsel's opening statement comment that "someone had replaced the ordinarily soft pliable feeding tube." The court concluded this statement was not objectionable and was consistent with the statement of the case read to jurors. The record before this Court does not

reflect that Plaintiffs again objected or voiced concern during trial that Defendants were violating the ruling regarding motion in limine no. 18.[4]

¶15      Although Plaintiffs did not object during Defendants' closing argument, in their motion for new trial, they asserted defense counsel had violated the pretrial ruling by arguing "that Billy Brumett had replaced his wife's feeding tube." Plaintiffs did not cite any portion of the closing argument that ran afoul of the ruling. In response, Defendants "challenge[d] Plaintiffs to point to one area in the entire record wherein the defense argued that Billy Brumett (as opposed to generically 'someone') swapped out his wife's soft, pliable j-tube with a rigid, sharp tube." In reply, Plaintiffs cited only the following excerpt from Defendants' closing argument:

> And whoever reinserted [the J-tube], if it was reinserted, or whoever changed it, if it was a different tube, had knowledge that that had been done, but not Nurse Bosman. She couldn't have known.

¶16      Plaintiffs' failure to object during closing argument "constitutes a waiver unless the matter is so serious that no admonition could undo the damage." *Maxwell v. Aetna Life Ins. Co.*, 143 Ariz. 205, 214 (1984). The appellate record discloses neither fundamental error nor misconduct by counsel on this point. *See Liberatore v. Thompson*, 157 Ariz. 612, 620 (App. 1988) ("[T]hough a party risks forfeiting a potential ground for appeal by withholding prompt objection to an opponent's misconduct, he does not forfeit the right to assert such misconduct as a basis for sustaining the trial court's new trial order if the trial court finds the impropriety sufficient to warrant a new trial despite the absence of a prompt objection.").

¶17      Waiver aside, defense counsel's closing argument was consistent with the court's ruling on motion in limine no. 18 — suggesting that *someone* had replaced Connie's J-tube, but not naming either of the

---

[4]      Outside the jury's presence, Defendants sought to have the court reconsider its ruling on motion in limine no. 18 based on evidence that, on a prior occasion, Billy had replaced Connie's J-tube with a "much stiffer" Foley catheter. The court declined to reconsider its ruling, and the record does not disclose any evidence or argument in front of the jury regarding this prior incident.

Brumetts as that "someone." Plaintiffs conceded as much during oral argument on their motion for new trial:

> THE COURT: Well, defense counsel never actually in his closing argument said that Mr. Brumett had replaced [the J-tube].
>
> [PLAINTIFFS' COUNSEL]: That's correct, [Y]our Honor, but Plaintiff[s]' contention is not that direct express statement of that would alone would be in violation of the Court's previous ruling on motion in limine number 18, but even implied or suggestive argument would be enough to raise the issue for a new trial.

¶18         The superior court did not grant a new trial based on a conclusion it had erred by permitting Defendants to argue that *someone* had replaced Connie's J-tube. *See, e.g.*, Ariz. R. Civ. P. ("Rule") 59(a)(6) (New trial may be granted for "[e]rror in the admission or rejection of evidence."). The court instead ordered a new trial because "Defendants violated the Court's ruling regarding Motion in Limine #18 and . . . Plaintiffs were prejudiced by that violation." But even viewing the record in the light most favorable to sustaining that determination, there was no such violation. The record does not support the grant of a new trial on that basis. *See Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982) ("[T]he appellate court may find an abuse of discretion if the record fails to provide substantial evidence to support the trial court's finding.").

## II.      Defendants' Motion in Limine No. 12

¶19         Defendants moved in limine (referred to here as "motion in limine no. 12") to preclude Nurse Diana Greenberg (Plaintiffs' standard of care expert), Dr. Keith Beck (Plaintiffs' causation expert), and Connie's treating physicians from "offering an opinion that the soft, pliable J-tube that Dr. Schuster surgically inserted into Connie Brumett on July 27, 2009, morphed into the hard, sharp tipped tube that Dr. Abdo removed during the November 25, 2009 surgery." Defendants argued Nurse Greenberg had conceded "she is not a J-tube expert . . . and she did not know what happens to the J-tube consistency over time when it is in a patient." Defendants further asserted Plaintiffs had not disclosed any opinion by Nurse Greenberg that the J-tube Dr. Schuster inserted "morphed into the hard, sharp tipped tube" removed in November. Defendants similarly argued Dr. Beck "never offered an opinion that the J-tube that Dr. Schuster inserted . . . morphed into a hard, sharp tipped tube that

Dr. Abdo removed." Finally, Defendants contended none of Connie's treating physicians had offered opinions about changes in J-tubes over time.

¶20 In their response, Plaintiffs opposed Defendants' motion only as to Nurse Greenberg, relying on the following excerpt from her deposition:

Q. Does the structural integrity of a feeding tube change over time?

A. It can. A lot of tubes, whether it's G-tube, J-tube, PICC lines, in my practice they are not supposed to over time, **but there are occasions where it breaks off or it becomes brittle**, and that's why when I have my nurses remove a PICC line, they have to look at the entire tubing to see if there's any breakage of the catheter or the tube. So that applies to Foleys. It applies to any kind of tubing.

Q. Do tubes, by virtue of the fact that they become brittle and otherwise crack and break over time, do they need to be replaced periodically?

A. They need to be replaced periodically.

Based on this deposition testimony, Plaintiffs argued, "Greenberg has provided ample testimony of her experience with the transformation of j-tubes and Plaintiffs should be allowed to present evidence on this issue."

¶21 The superior court denied motion in limine no. 12, "subject to proper foundation being laid." At trial, Plaintiffs attempted to question Nurse Greenberg about changes in J-tubes over time. That brief exchange occurred as follows:

Q. Do you have any knowledge or experience with the integrity of J-tubes changing because of exposure to bodily fluid secretions and enteral feedings?

[DEFENSE COUNSEL]: Your Honor, lack of disclosure. May we approach?

(Bench conference held.)

THE COURT: Objection sustained.

The record on appeal does not include a transcript of the bench conference. In the absence of a transcript, this Court presumes the record supports the sustaining of Defendants' objection on "lack of disclosure" grounds. *See Johnson v. Elson,* 192 Ariz. 486, 489, ¶ 11 (App. 1998).

¶22 In their motion for new trial, Plaintiffs argued that they also attempted to question Drs. Beck and Banerjee at trial about changes in J-tubes. The trial transcripts do not support this assertion. No such questions were posed to Dr. Banerjee.[5] Nor did Plaintiffs' counsel question Dr. Beck about this topic. During cross-examination, Dr. Beck testified he does not insert or care for feeding tubes and does not know whether the ends of J-tubes are "stiff and sharp or soft and pliable." Plaintiffs did not revisit this topic with Dr. Beck during his re-direct testimony.

¶23 The question thus becomes whether the record supports the superior court's conclusion "it was in error not to permit testimony from Plaintiffs' witnesses 'regarding the hardening of the feeding tube' that was the subject of Defendants' Motion in Limine #12." Because Plaintiffs attempted to question only Nurse Greenberg on this point, the only potential error would be in sustaining the non-disclosure objection to her testimony.

¶24 At deposition, Nurse Greenberg testified that the structural integrity of a feeding tube can change over time, but she did not discuss what might cause such changes. The question posed at trial was whether the integrity of J-tubes changes "because of exposure to bodily fluid secretions and enteral feedings." Nothing in Nurse Greenberg's deposition testimony addressed causative factors, and Plaintiffs' pretrial disclosure stated only that Greenberg would testify "in accordance with her deposition testimony." *See* Rule 26.1(a)(6) (Party calling expert witness at trial must disclose, *inter alia*, "the substance of the facts and opinions to which the expert is expected to testify" and "a summary of the grounds for each opinion.").

---

[5] The court and counsel did, however, discuss whether a nurse practitioner's note included in Dr. Banerjee's medical records, reflecting that a previous J-tube had "crystallized," should be redacted. Defense counsel avowed, without contradiction, that Dr. Banerjee testified at her deposition that she did not know what the "crystallized" reference meant. There is no indication in the record that Plaintiffs disclosed any opinions Dr. Banerjee intended to offer regarding changes in J-tubes over time.

¶25 Furthermore, unlike its ruling on motion in limine no. 18, the superior court did not find that sustaining the objection to Nurse Greenberg's testimony prejudiced Plaintiffs. *See* Rule 59(a) (court may grant a new trial for identified reasons that materially affect the movant's rights); *Simpson v. Heiderich*, 4 Ariz. App. 232, 234 (1966) ("[A]ny prejudice to a litigant must be 'affirmatively probable' to constitute grounds to set aside the verdict or grant a new trial."). If Nurse Greenberg's expert opinions were not properly disclosed, there could be no prejudice in precluding her testimony. Additionally, as Defendants note, Dr. Schuster testified at trial that since his deposition, where he stated he had never seen a hardened J-tube, he had in fact seen a tube that had hardened. *See Ott v. Samaritan Health Serv.*, 127 Ariz. 485, 489 (App. 1980) (excluded evidence that "essentially repeats, and in some instances elaborates on," presented testimony is cumulative and thus not prejudicial).

¶26 For the foregoing reasons, the record does not support the grant of a new trial based on Plaintiffs' inability to present testimony "regarding the hardening of the feeding tube."

**III.   Other Grounds Asserted in Plaintiffs' Motion for New Trial**

¶27 The new trial order was based solely on the two grounds discussed *supra*. *See* Rule 59(m) ("No order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted."). Plaintiffs nevertheless ask this Court to affirm that order on four grounds rejected by the superior court: (1) violation of a ruling on a motion in limine relating to statements by Connie and the "erroneous" reversal of that ruling during trial; (2) error in excluding Bosman's deposition and nursing board records; (3) Plaintiffs' inability to offer evidence that earlier treatment could have prevented Connie's death; and (4) Defendants' use of medical records during their closing argument.

¶28 We address each argument in turn, concluding that none of the stated grounds required the grant of a new trial.

**A.   Statements by Connie**

¶29 Plaintiffs filed a motion in limine asking the court to "exclude any testimony about statements attributed to Connie Brumett that are contained in nursing records prior to November 23, 2009." Specifically, Plaintiffs objected to record entries reflecting that Connie said "[h]elp me," or words to that effect, on approximately 40 prior occasions. Plaintiffs argued these statements were irrelevant. Defendants opposed

10

the motion, contending it would be "extremely prejudicial to the defense for the jurors to learn that Mrs. Brumett yelled 'help me' on November 23–24, 2009, without knowing she did this frequently in the six months prior to the jejunum perforation." The superior court granted Plaintiffs' motion "subject to further argument at trial."

¶30        The court and counsel revisited this issue during trial, outside the jury's presence, after Billy testified that he read "the entire record" after Bosman left her shift on November 24, 2009 and did not recall it saying "anything about [Connie] making statements like, 'Stop, you're hurting me,' or any kind of crying out in pain." Defense counsel argued Plaintiffs had "opened the door" to the "help me" references included in the nursing records. The court agreed, ruling it would "allow questions to be asked and evidence to be received with regard to Ms. Brumett's cries for help."

¶31        The court did not abuse its discretion. "[W]here one party injects improper or irrelevant evidence or argument, the 'door is open,' and the other party may have a right to retaliate by responding with comments or evidence on the same subject." *Pool v. Superior Court*, 139 Ariz. 98, 103 (1984). The court could reasonably conclude that Billy's comment about reviewing "the entire record" opened the door to the previously precluded evidence about Connie's earlier calls for help. Plaintiffs also contend defense counsel improperly mentioned Connie's "[h]elp me" statements during his opening statement, before the door had been opened. They did not, however, object to those comments and have therefore waived the issue for purposes of appeal.

### B.        Bosman's Deposition and Nursing Records

¶32        After Connie's death, Plaintiffs filed a complaint against Bosman with the Arizona Nursing Board. Bosman was diagnosed with dementia in 2011 and entered into a consent decree in August 2011 whereby she voluntarily surrendered her nursing license. The Pinal County Superior Court determined Bosman was incapacitated and appointed the public fiduciary as her guardian and conservator for purposes of "manag[ing] the defense of *Brumett vs. MGA Home Health Care, et al.*" When Plaintiffs deposed Bosman, she did not recall Connie Brumett or working as a nurse.

¶33        Plaintiffs contend the court erred by precluding their use of Bosman's deposition and nursing board records at trial. We conclude otherwise.

¶34 Plaintiffs did not allege Bosman was mentally compromised when she cared for Connie. In fact, when Defendants moved in limine to preclude any suggestion Bosman was impaired while caring for Connie, Plaintiffs responded that they had no objection to the motion. Under these circumstances, the superior court could properly conclude the subsequent dementia diagnosis and license surrender were irrelevant to the issues before the jury.[6] *See, e.g., Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398–99 (App. 1990) (no error in precluding evidence of defendant's chemical dependency because no evidence suggested he was under the influence at the time of the incident); *Ornelas v. Fry*, 151 Ariz. 324, 330 (App. 1986) (Affirming trial court's "evidentiary ruling requiring a specific and particularized factual predicate of alcohol-related impairment" at the time the defendant doctor performed surgery.).

¶35 In terms of the deposition, Defendants filed a motion in limine asking the court to preclude its use at trial because Bosman's dementia "rendered it impossible for her to give intelligent answers to the questions." According to Defendants, it would "waste the Court's time and the jury's time to see this unfortunate woman struggle to answer questions regarding events she could no longer remember." Defendants further contended they would be "extremely prejudiced" if jurors viewed the videotaped deposition — especially because there was no indication Bosman was suffering from mental impairment while caring for Connie. In opposing Defendants' motion, Plaintiffs expressed skepticism about Bosman's professed lack of memory at her deposition, especially when compared to her behavior during the preceding months. The court granted Defendants' motion.

¶36 Based on the record and arguments before it, the superior court did not abuse its discretion by precluding the use of nursing board

---

[6] The consent decree includes one finding of fact:

> In about June 2011, Respondent was diagnosed with dementia. Because of her psychiatric condition, Respondent is unable to work as a nurse.

The conclusions of law state that this finding constitutes "unprofessional conduct pursuant to A.R.S. § 32-1601(16)(e) (being mentally incompetent or physically unsafe to a degree that is or might be harmful or dangerous to the health of a patient or the public)."

records and Bosman's deposition at trial. Because that evidentiary ruling was not erroneous, and nothing at trial altered the factual or legal significance of these matters, the court also did not abuse its discretion by denying a new trial on this basis.

### C.       Earlier Treatment

**¶37**       Defendants filed a motion in limine to preclude "any argument, evidence or testimony that earlier treatment would have altered Mrs. Brumett's outcome." The motion noted that Plaintiffs' causation expert, Dr. Beck, testified at deposition that he had not formulated an opinion on that issue and that Plaintiffs had disclosed no other expert opinion regarding the efficacy of earlier treatment. In response, Plaintiffs did not dispute Defendants' assertions, but argued that Dr. Beck testified "he could and would offer his qualified opinions when asked" and that Defendants "opened the door" to testimony about whether earlier treatment would have altered the outcome. The superior court granted Defendants' motion.

**¶38**       Plaintiffs have demonstrated no abuse of discretion. They did not disclose any expert opinion that earlier treatment would have led to a different outcome. *See* Rule 26.1(a)(6) (expert witness disclosure requirements). And once again, nothing transpired during trial that changed the factual or legal analysis of this issue. The superior court did not err by precluding the challenged evidence or by denying a new trial on that basis.

### D.       Medical Records Used During Closing Argument

**¶39**       Plaintiffs contend Defendants improperly referred to medical records of Dr. Abdo and Dr. Khanna during closing arguments. Plaintiffs, however, did not interpose a timely objection. The record suggests (and Plaintiffs do not claim otherwise) that Plaintiffs voiced an objection only after the jury had been excused to deliberate. Plaintiffs waived the asserted error by failing to timely object. *See* Ariz. R. Evid. 103(a); *S. Ariz. Freight Lines v. Jackson*, 48 Ariz. 509, 518 (1936) ("Parties may not sit by and allow error which is not fundamental to be committed, without protesting and asking the trial court to correct the error at the time, and then later, when the judgment goes against them, ask for a new trial on that ground.").

## CONCLUSION

¶40 For the foregoing reasons, we vacate the superior court's order granting a new trial and remand with instructions to enter judgment on the jury's verdict in favor of Defendants.

